STATE ex rel. GRAHAM vs. THE CHAMBER OF COMMERCE OF THE CITY OF MILWAUKEE.

*Chamber of Commerce—Compulsory arbitration—Submission to arbitration discontinues action at law—Amotion—Limitations of power—Power of corporation to expel member cannot be delegated—Mandamus.*

1. Where A. had commenced an action against B. in the circuit court, both parties being members of the Milwaukee Chamber of Commerce, organized under ch. 132, Laws of 1858 (R. S., p. 490), the committee of arbitration of said Chamber could not take jurisdiction, without A.'s consent, of a complaint by B. against A. for a balance alleged to be due the complainant upon an account involving the same subject matter as the action of A.

2. A submission of such matter to the arbitration of said committee by A. would have operated as a discontinuance of his action at law, and would have released parties whom he had summoned as garnishees therein.

3. Where the power of amotion is conferred by statute in general terms, it is conferred to enable the corporation to accomplish the objects of its creation, and is limited to those purposes.

4. In such cases there are but three legal causes of amotion: 1. Offenses of an infamous character, indictable at common law. 2. Offenses against the corporator's duty to the corporation as a member of it. 3. Offenses compounded of the two former.

5. The refusal of A. to make the submission in this case, or to abide the decision of the committee of arbitrators in an *ex parte* proceeding by B., was not a violation of his duty as a corporator; and he was not liable to expulsion or suspension for such refusal.

6. The power of amotion (including that of suspension) belongs to the *corporation* only, and cannot be delegated to the board of directors. The words of the statute, that such corporation "shall have the right to admit as members such persons as they may see fit, and expel any members as they may see fit," do not authorize such a delegation of power.

7. *Mandamus* will lie against the board of directors of such an association, to re-restrain them from depriving a member of the association of his franchise.

APPLICATION for a *Mandamus.*

"The Chamber of Commerce of the City of Milwaukee" is a corporation existing under the provisions of ch. 132, Laws of 1858, R. S., p. 490. Section 1 of the act provides that the members of such an association may "adopt a name, constitution and by-laws such as they may agree upon." Section 2 provides that said corporation "shall have the right to * * expel any member as they may see fit." Section 7 provides that "the award of any general committee of reference appointed by said corporation, upon any matter of difference submitted to said committee for arbitration, in writing, with or without seal, by any member of said corporation, or by any other person, shall have the same force and effect as if the same had been submitted to the arbitration of the members of said committee of reference by their individual names, by deed of submission; and such award may be filed and made a rule of court, and judgment entered thereon," &c. "Section 8. * * * Said committee of reference, when sitting as arbitrators as aforesaid, shall have the right to issue subpœnas, and compel the attendance of witnesses by attachment, the same as justices of the peace." Among the "Rules and By-Laws" adopted by said corporation, are the following: "Art. XIII. · * * * Any charges against members shall be made to the board of directors, in writing, and shall by that board be investigated and reported to the association." "Art. XIX. Any member failing to observe the rules and regulations of this association, or for

any cause deemed sufficient, may be expelled by a vote of a majority of the members present, which vote shall be taken by ballot, at any regular or special meeting, and after an opportunity shall have been given him for a fair hearing in his defense." Among the "Special Rules and Regulations" adopted by the association, is the following: "Rule 12. Any member of the association, making a contract, either written or verbal, and failing to comply with the terms of such contract, shall, upon representation of an aggrieved member to the board of directors, accompanied with satisfactory evidence of the facts, be suspended by them from all privileges of membership in the association, until such contract shall be equitably arranged and settled. And it shall be the duty of the board of directors to cause to be publicly announced to the association the suspension or restoration of any member suspended under this rule."

On the 9th of March, 1865, the board of directors of said corporation adopted a resolution "that *John Graham* be, and hereby is, suspended from all privileges of membership in the Chamber of Commerce, until such time as he shall have equitably settled the matter of difference presented to this board between him and Charles J. Kershaw." The present application is made by said *Graham*, for a writ of *mandamus* directed to said Chamber of Commerce, commanding it to restore him to all rights, privileges and franchises as a member and corporator thereof, or show cause &c. The petition contains suitable allegations to show damage to the relator accruing from his exclusion from the privileges of a member of said corporation. The substance of the allegations relating to the grounds of his suspension will be found stated sufficiently in the opinion of this court.

An alternative writ having issued, the respondent moved to quash the same.

*Emmons, Vandyke & Hamilton*, for the motion:

1. The corporation had the general power to suspend members for violations of its rules and offenses against its govern-

ment, and the objects of its creation. This power would exist at the common law; and by sec. 2 of the charter the corporation may expel members *as it may see fit.* The doctrine is established, that to legally remove a corporator for refusal to abide by a rule or by-law of the corporation, the rule or by-law must be such as the corporation was empowered to enact; in other words, relating to and based upon some one or more of the objects for which the corporation was created. *Commonwealth v. St. Patrick Benevolent Society,* 2 Binney, 441; *People v. Erie Medical Society,* 24 Barb., 570. In both of these cases it was fully admitted that if the charter had, in terms or by necessary inference, permitted legislation by way of rule or by-law on the given subject, the expulsion would have been lawful. 24 How. Pr. R., 206; *State v. City of Watertown,* 9 Wis., 254; *People v. N. Y. Com. Association,* opinion of MILLER, J., 18 Abb., 271. Secs. 7 and 8 of the charter expressly provide for committees of arbitration for settlement of matters of difference between the members; and it contemplates a constitution and by-laws on that subject. Rule 12 has especial reference to a refusal to submit to arbitration, in the use of the words " equitable arrangement and settlement."—In *State v. Watertown,* 9 Wis., 254, the power given was to expel *for due cause;* and the court held that these words were a limitation upon the power, and *hence* the court had a right to inquire what was due cause. In the present case, the power being general—the constitution and by-laws conforming in their subjects to the charter—the court will not inquire whether the relator had any private reasons, pecuniary or otherwise, why he declined to observe a legal by-law.

*Butler v. Cottrell, contra,* contended, among other things, that Rule 12 of the " Special Rules," is void. 1. It makes the board of directors a judicial tribunal; and to act under it at all, they must act judicially. They are to suspend any corporator on being satisfied of two facts, viz., that he has made a contract, and that he has been guilty of a breach of it. A contract is a

thing of legal effect, and to determine either that one has been made, or that it has been violated, is a judicial determination. The association could as lawfully provide that the directors should have power to assess the damages resulting from the breach of the contract, as that they shall suspend the party for its violation. In the one case the determination would affect the *property* of the corporator, in the other his *franchise.* The corporation cannot confer on its directors judicial power. The charter confers no such power, nor does the legislature of this state possess the constitutional power to confer it. Cons. of Wis., Art. vii, sec 2. Sec. 16 of the same article provides that the legislature shall pass laws for the regulation of tribunals of conciliation; but in these tribunals the judgments are binding only when the parties voluntarily submit to them their matters in difference, and agree to abide the judgment, or assent thereto in writing. That the board of directors of the Chamber of Commerce is not one of the judicial tribunals mentioned in the constitution, seems too plain for argument. *State ex rel. Rogers v. Judge Co. Court,* 11 Wis., 50; *State ex rel. Gill v. Common Council, &c.,* 9 Wis., 254, Counsel also contended that section 7 of the act of 1858, and article 4 of the respondent's constitusion, are invalid under the two cases cited above. They also cited A. & A. on Corp., secs. 332, 333, 335; *People v. Kip,* 4 Cow. 382; *K. & P. R. R. Co. v. Kendall,* 31 Me., 470; *Taylor v. Griswold,* 2 Green (N. J.), 223. 2. By the operation of Rule 12 in this case, the relator was compelled to abandon his right to sue Kershaw in court, or forfeit his franchise as a corporator. By submitting to the arbitration he would have discontinued his suit, and lost the security he had by the garnishment. *Mackey v. Pierce,* 3 Wis., 307; *Bigelow v. Goss,* 5 id., 421; *Dolph v. Clemens,* 4 id., 181. Such a rule violates the seventh article of the amendments to the constitution of the United States, which declares that "the right of trial by jury should be preserved," and sec. 5, Art. I of the constitution of this state, which declares that the right of trial by jury shall

remain inviolate. Both provisions require that the right shall neither be wholly nor partially destroyed, nor in any manner embarassed or infringed upon—that no person shall be compelled to abandon another right in order to avail himself of this. So also these rules violate sec. 9, Art. I of our state constitution, which guaranties to every person "a certain remedy in the laws," (viz., through the constituted legal tribunals of the state, according to the laws thereof), and gives the right to obtain justice "freely and without being obliged to purchase it"—that is, at no expense or barter of money or of any other right. Equally do these rules violate the well established rules of the common law in force in this state by sec. 13, Art. 14 of the constitution. A. & A., sec. 341, and cases cited in notes; *Ballard v. Bennet,* 2 Burr., 778. Counsel further cited *People ex rel. Gray v. Med. Soc. of Erie Co.,* 24 Barb., 571; *Comm. v. St. Patrick Benevolent Soc.,* 2 Binney, 441; *Comm. v. Guardians of Poor,* 6 Serg. & R., 469; *Comm. v. Pa. Beneficial Inst.,* 2 id., 141; *Matter of Butchers' Association,* 38 Pa. Stat., 298; 35 id., 151; *People v. Benev. Soc.,* 24 How. Pr. R., 216; *Calder & H. Nav. Co. v. Pilling,* 14 M. & W., 76; *Marion Ben. Soc. v. Drake,* 31 Pa. St., 82; 10 id., 357; 15 id., 251; *King v. Faversham,* 8 Term, 340; A. & A., sec. 412. 3. The power of expulsion given by the general act under which the respondent is organized, is in the corporation, and cannot be delegated to the directors. A. & A., sec. 724; *Green v. Af. Meth. Ep. Society,* 1 Serg. &. R., 254; *King v. Faversham, supra*; *King v. Richardson,* 1 Burr., 530; *King v. Lyme Regis,* 1 Doug., 158.

The motion to quash was denied, and the following opinion filed, July 28th, 1865.

DOWNER, J. The defendant moves to quash the alternative writ of *mandamus,* for the reason that the same does not show upon its face that the relator is entitled to the relief prayed. The writ shows, in substance, that the relator and Charles J. Kershaw were both members of the Chamber of Commerce,

and had had dealings with each other, and there were accounts between them growing mostly out of the purchase and sale of produce; that each claimed the other was indebted to him; that *Graham* commenced an action against Kershaw in the county court of Milwaukee county, to recover the amount he alleges Kershaw owed him, and garnisheed divers banks and persons, and thereby, as he believes, secured the debt; and that Kershaw is insolvent. Kershaw, soon after the commencement of said action, presented his complaint to the committee of arbitration organized under the constitution and by-laws of the corporation defendant, claiming that *Graham* was indebted to him in a large sum. In the account of Kershaw, presented to the committee, on which he claims a balance is due him from *Graham*, there appear as credits the very items on which *Graham* brought his action. The relator alleges that Kershaw preferred his complaint with the intention of compelling him to discontinue his suit in the county court, and release his security obtained by the service of the garnishee process. Kershaw appeared to the suit in the county court, and set up, by way of counter-claim or off-set, the same claim he presented to the committee of arbitration. It is evident, from the relator's allegations, that he could not submit to arbitrate the matter before the committee without there setting up, and having them pass upon, the identical claim or account on which he had brought suit in the county court. To do this would, by a well known rule of law, be a discontinuance of that suit at his costs, and release all the garnishees. It is clear one tribunal or the other must draw to it the claims of both parties and pass upon them, or otherwise injustice would be done. *Graham* refused to do an act which would operate as a discontinuance of his action, and the committee proceeded *ex parte*, in his absence, after he had informed them of the pendency of his suit against Kershaw and the proceedings therein, and insisted they had no right to proceed on Kershaw's complaint; and they found, on the *ex parte* testimony of Kershaw, that *Graham* was indebted

to him in the sum of $2,570.68. This sum not being paid, the board of directors, on complaint of Kershaw, suspended *Graham* from all privileges of membership in the Chamber of Commerce, until he should equitably settle this matter of difference; in other words, until he should pay Kershaw the amount found due him by the arbitrators : for that must be the meaning. They acted in doing this under special rule 12 of the Chamber of Commerce. The referees acted under the seventh section of the act aforesaid, and under by-laws providing for a compulsory reference. If we should concede that the association had the right to compel its members to submit their matters of difference to arbitration when no suit respecting the same was pending, it would not follow that the corporation could directly, or indirectly, by expelling its members, interfere with or control an action commenced by either party in any court before complaint made to the corporation or its officers. It certainly could not have greater rights than courts of concurrent jurisdiction have, the one over proceedings in the other. It is a well established general rule, that where two courts, organized under the laws of the same state, have concurrent jurisdiction of the subject matter of an action, the one in which the suit is first commenced takes exclusive jurisdiction, and draws to it all that pertains to the action. And in many cases, if the defendant in the action thus first commenced attempts to defeat the action by a suit even in another state, the tribunal which first obtains jurisdiction will, if it have jurisdiction of his person, restrain him by injunction from proceeding in the second action. Apply these familiar principles to this act, and it cannot, by any fair construction, give to the corporation a right to compel a member to submit the subject matter of a suit already commenced by him, to arbitration before a committee of the association. Acts granting powers to corporations such as the defendant, are to be *strictly* construed. We cannot imply any such power as is contended for. It could be conferred only by language so plain and un-

ambiguous as to leave no doubt of the intention of the legislature to grant a power greater than is exercised by courts having concurrent jurisdiction.    This case differs from that of the *People v. The New York Commercial Association*, 18 Abbott's Pr. R., 271, cited on the argument.    That was a case of expulsion for obtaining goods by false pretenses ; and although a suit was pending, the party accused could make his defense before the association without *directly* affecting his rights in the suit.

When a corporation is duly organized, it has power to make by-laws and expel members, though the charter is silent upon the subject.    If the power is expressly granted in general terms, it is conferred to enable the corporation to accomplish the objects of its creation, and is *limited to such objects or purposes.*    2 Kent, 296 ; *The People v. The Medical Society of the Co. of Erie*, 24 Barb., 575, and authorities there cited.    It appears to be well settled, that where the charter of a corporation is either silent upon the subject of expulsion, or grants the power in general terms, there are but three legal causes of disfranchisement : 1. Offenses of an infamous character indictable at common law. 2. Offenses against the corporator's duty to the corporation, as a member of it.    3. Offenses compounded of the two.    If *Graham* has been guilty of either of these offenses, it is the second. Was it any part of the duty of *Graham* to the corporation to discontinue his action against Kershaw, submit his claim to the arbitrators, and thereby, in case Kershaw owed him, lose his debt ?    Is it necessary for the good government and management of the affairs of the corporation, that it should have power to compel him to do any such act ?    We cannot see that it is.    On the contrary, the assumption and exercise of the power in this case strikes us very unfavorably.    The refusal to submit his claim to the arbitrators, and to pay the award, under the circumstances, was not, within the rules laid down to govern us in such cases, a violation of his duty to the corporation. *The Commonwealth v. St. Patrick Benev. Soc.*, 2 Bin., 441 ; *The People v. The Medical Society of the County of Erie*, above cited.

The second section of the act provides that the *corporation* shall have the right to admit and expel members. Who is to exercise the power of expulsion? The body of the corporators, or the board of directors? We are of opinion that disfranchisement of a member is not a part of the general management of the business of the corporation entrusted to its board of directors; but it is a power confided to the body of corporators. The suspension of *Graham* was a qualified expulsion. Whether it is called suspension or expulsion, it disfranchises him either temporarily or permanently. As he was suspended by the board of directors without a vote of the members of the corporation, his suspension was unauthorized.

*By the Court.*—The motion to quash is overruled, with ten dollars costs of motion, and the defendant has leave to answer within twenty days.

The respondent having made return to the alternative writ, the relator moved for a peremptory writ.

DOWNER, J. The relator moves for a peremptory writ of *mandamus.* The return to the alternative writ admits that *Graham* was suspended by the board of directors. This court has already decided in this case, that the board of directors had not the right or power to suspend, but that that power was entrusted to the body of the corporators. It was urged at the hearing of this motion, that the court had erred in so deciding, and that the corporators could delegate by by-law this power to the board of directors; and *Rex v. Richardson,* 1 Burrow's Reports, 532, was cited as an authority to this point. Lord MANSFIELD, in delivering the opinion of the court in that case, said: "In Lord Bruce's case, 2 Strange, 819, the court says the modern opinion has been, that the power of amotion *is incident* to the corporation. We all think this modern opinion is right. It is necessary to the good order and government of corporate bodies that there should be such a power, as much as the power to make by-laws. Lord COKE says, 'there is a tacit

condition annexed to the franchise, which if he breaks he may be disfranchised.' But where his offense is *merely against his duty as a corporator*, he can only be *tried* for it *by the corporation*. Unless the power is *incident*, franchises or offices might be forfeited for offenses, and yet there would be no means to carry the law into execution. Suppose a by-law made *to give power of amotion for a just cause*, such by-law would be good. If so, a corporation, by virtue of an *incident* power, may raise to themselves authority to remove for just cause, though not expressly given by charter or prescription." This is not a decision to the effect that the corporation could delegate to a part of the corporators, by by-law, the power of amotion or suspension. If we understand the case rightly, it is to the effect that where the power of expulsion is not *expressly* given to the corporation in the charter, the power is *implied*, or, in the language of the opinion, *incident*. And wherever the corporation has the implied power of expulsion, it may, by by-law, provide for what offenses it will exercise this power, and the by-law will be valid, if it keeps within the causes of expulsion previously defined by Lord MANSFIELD in his opinion. It has not been directly determined in any case that the power of amotion granted to the body of the corporators may be transferred by a by-law to a select body ; and we think it cannot be done, unless the power of delegation is expressly given by the charter Section two of the charter provides : " Said corporation shall have the right to admit as members such persons as they may see fit, and expel any member as they may see fit." It was contended that this clause gave power to the corporation to delegate to the board of directors the power of suspension or expulsion. We are unable to torture it into any such meaning, and are satisfied that our first decision on this point is correct.

It was further contended that the defendant was a mere private corporation, and the relator was not entitled to a remedy by *mandamus*. This case, however, is clearly within the mod-

ern rule and recent authorities. See cases cited in the former opinion ; also Ang. & Ames on Corp., §§ 704, 705, 698, and cases there cited ; *The People v. Medical Society of Co. Erie,* 24 Barb., 572 ; *The People v. St. Franciscus Benevolent Society,* 24 How. Pr. R., 216.

*By the Court.*—The peremptory writ is awarded.