THE STATE ex rel. CUPPEL vs. THE MILWAUKEE CHAMBER OF COMMERCE and others.

PLEADING. *(1) When demurrer reaches back.*
CORPORATIONS. *(2) Affidavit for change of venue. (3) Power of courts over corporations. (4) Conditions of power to fine member. (5) When void proceeding no bar to subsequent proceeding. (6, 7) Certain rules of a chamber of commerce, valid. (8)* MANDAMUS *to restore suspended member.*

1. A demurrer to the relator's answer to the return to an alternative *mandamus,* treated as a demurrer to the relation.
2. In an action against a corporation and its directors, a defendant director, who was also secretary of the corporation, made an affidavit of the prejudice of the judge, and asked for a change of the place of trial; stating in the affidavit that he made it, and asked the change, for him-

The State ex rel. Cuppel vs. Milwaukee Chamber of Commerce and others.

self and in behalf and at the request of all the other defendants; and they all, by their attorney, moved for the change. *Held*, sufficient.

3. The jurisdiction and duty of the courts of this state in exercising the visitorial or superintending power of the state over its own corporations, to confine them within their franchises and correct and punish abuses thereof, asserted, and the modes of exercising such jurisdiction stated.

4. The imposition of a fine upon a member of the defendant corporation, in his absence, without notice, formal complaint or trial, *held* a void proceeding.

5. Where, after the member had been suspended for refusal to pay such fine, the proceeding was annulled by the directors, and the member restored, such void proceeding against him is no bar to a subsequent regular proceeding for the same offense.

6. A rule of the defendant chamber of commerce prohibiting its members from "gathering in any public place in the vicinity of the Exchange Room," and "forming a market" for the purpose of making any trade or contract for the future delivery of grain or provisions, *before the time fixed for opening* the Exchange Room for general trading, or *after the time fixed for closing* the same, daily, *held* to be within the power conferred on the corporation by its charter (ch. 158, P. & L. Laws of 1867, amended by ch. 39 of 1877), and not to be unreasonable or an unlawful restraint upon trade, nor void for uncertainty.

7. Under the present charter of said defendant, it may, by rule or by-law, confer upon the board of directors the power, and impose upon it the duty, of suspending a member convicted of a violation of the foregoing rule, who refuses to pay the fine imposed upon him therefor by the president in pursuance of another clause of the same rule. *State ex rel. Graham v. Chamber of Commerce*, 20 Wis., 63, approved but distinguished.

8. The relator having been fairly tried, upon due notice, and in accordance with the rules of the corporation, and there being abundant proof against him tending to show that he had committed the offense charged, he will not be restored by *mandamus*. But whether the court, in such a case, will look into the testimony for any purpose, *quære*.

APPEAL from the County Court of *Milwaukee* County.

The board of directors of the defendant chamber of commerce having suspended the relator, a member of the chamber, from the privileges of membership, for nonpayment of a penalty imposed upon him for an alleged violation of one of the rules of the chamber, the relator sued out of the circuit court an alternative writ of *mandamus*, commanding the

respondents to restore him to membership or show cause to the contrary.

On motion of the attorney for all the respondents, founded upon the affidavit of Langson, the secretary, and *ex officio* a director, the circuit court changed the place of trial to the county court, for the alleged prejudice of the circuit judge. Langson says, in the affidavit, that he makes it " on his own behalf, and on behalf and at the request of all the others, the above named respondents;" and " for himself, and for and on behalf and at the request of all the others, the above named respondents, prays that the place of trial of this, the said action, may be changed according to law."

When the case reached the county court, the relator moved that it be remanded to the circuit court, "on account of the irregular and improper removal of the said action, because no proper and legal application has been made therefor." The county court denied the motion. Thereupon the relator filed an amended relation; the respondents made return to the same; and the relator interposed an answer to such return. The respondents demurred generally to such answer, and specially to the various parts or paragraphs into which it is divided. The grounds of demurrer assigned (covering the whole pleading) are chiefly that the averments contained therein are argumentative and immaterial, and that the pleading contains matter of law alone.

The court sustained the demurrer, and gave judgment for the respondents, denying a peremptory *mandamus*, and dismissing the relation. The relator took this appeal from the judgment.

The history of the controversy between the relator and the chamber of commerce, out of which this action arose, as the same appears by the amended relation and the exhibits thereto attached, is substantially as follows:

The president of the chamber of commerce imposed upon the relator, a member of the chamber, a fine of five dollars for

an alleged violation of one of the rules of the chamber. The relator refused to pay it. Thereupon the board of directors, on or about October 30, 1878, adopted a resolution suspending him from the privileges of membership until he should pay such fine.

The relator then sued out of the circuit court an alternative writ of *mandamus*, commanding the chamber of commerce and its board of directors to reinstate the relator, or show cause to the contrary. It is alleged, in the relation or petition for the writ, that the relator had no notice of the proceeding against him until after the fine had been imposed; " that no charges in writing have ever been exhibited or served upon him; that he has had no trial therefor; has seen or heard no testimony against him convicting him of any offense whatever; and he denies that he is guilty of any."

November 20, 1878, the board of directors rescinded the resolution suspending the relator, and restored him to the privileges of a member of the chamber. Afterwards the respondents in the alternative writ of *mandamus* made return thereto that they had thus restored him.

November 22, 1878, a formal charge for violating the same rule was preferred by the secretary against the relator, of which due notice was served upon him. A time was appointed for his trial before the board of directors, at which time he appeared before the board in person and by counsel. A trial was had, and witnesses on both sides were sworn, examined and cross-examined; and counsel for the relator argued the case to the board. It should be stated that the relator objected to the sufficiency of the complaint, and also insisted, as a bar to the proceedings, that the matter had once been adjudicated against him, and further, that there was no legal authority for the proceedings. The board overruled these several objections, and found the relator guilty of the offense charged. The president thereupon imposed upon him a fine of five dollars, and the board (nine members thereof being

present and voting) unanimously adopted the following preamble and resolution:

" WHEREAS, *Charles Cuppel* has been found guilty in manner and form evidenced by the foregoing resolution, in pursuance of the power given under section 6 of rule 11, to inflict such discipline as the board of directors may determine,

" *Resolved*, That the said *Charles Cuppel* be and hereby is suspended from the privileges of membership of the chamber of commerce until he shall have paid the fine inflicted upon him by the president; this resolution to take effect immediately upon notice being served upon said *Charles Cuppel* of the infliction of said fine and the passage of this resolution, and upon his neglect or refusal forthwith to pay said fine."

The foregoing proceedings by and before the board were had November 29, 1878, and on the day following due notice in writing of such proceedings, with demand of payment of the fine, signed by the secretary, was served upon the relator. It does not appear that the fine was paid. It is a fair inference from the allegations in the relation, that it was not.

From the time of such demand the relator has been excluded from the rooms of the chamber of commerce, and from the privileges of a member thereof; and he brought this action for the purpose of compelling the respondents to restore him to those privileges.

The confused state of the record, and the great mass of exhibits attached to the amended relation, and constituting portions of it, have rendered it extremely difficult to ascertain the precise facts alleged by the relator; but it is believed that the foregoing is a correct statement of all the facts alleged by him which are material to the case.

The return or answer of the respondents to the relation, and the reply of the relator thereto, are sufficiently noticed in the opinion, and it is not necessary to state their contents here.

*J. J. Orton*, for the appellant:

1. The rule for the alleged violation of which the relator was

fined, is void. (1) When a corporation is empowered by its charter to make by-laws in certain cases and for certain purposes specified, its power of legislation is limited to those cases and purposes. A. & A. on Corp., §§ 111, 325. Respondent's charter empowers it only "to make such rules and by-laws . . . as may seem proper or necessary *for the good government of the corporation.*" But the rule in question has nothing to do with the good government of the corporation, and is therefore *ultra vires. Rex v. Cutbush,* 4 Burr., 2204; *Rex v. Ginever,* 6 Term, 735–6; *Beaty v. Knowler's Lessee,* 4 Peters, 152–167; *Jansen v. Ostrander,* 1 Cow., 686; Field on Corp., § 295. (2) By-laws must be reasonable, and not nugatory, unequal, vexatious, oppressive or manifestly detrimental to the interests of the corporation. *Regina v. Saddlers' Co.,* 3 El. & El., 43; *People ex rel. Muir v. Throop,* 12 Wend., 183, 186; Grant on Corp., 80, 81. Whether they are reasonable and consistent with law, is a question solely for the court. 12 Wend., 186; 3 Pick., 462; *Rex v. Spencer,* 3 Burr., 1839; 10 Wend., 100; 5 Cow., 465; A. & A., §§ 347, 357, and cases there cited; Field, § 296. Counsel argued at length that the rule in question was unreasonable and oppressive. (3) The rule is void because in restraint of trade. A. & A., §§ 335–9, and cases there cited; Grant on Corp., 83, 88, and cases; Field, § 297, and cases; *Dunham v. Trustees,* 5 Cow., 462; *Adley v. Whitstable Co.,* 17 Ves., 315; *Adley v. Reeves,* 2 M. & S., 53; *King v. Steward,* 8 Term, 352; *Hesketh v. Braddeck,* 3 Burr., 1847. (4) A by-law is void which enacts a *penalty upon a penalty* — as, in this case, fine and suspension. A. & A., § 363, and cases there cited; *Adley v. Reeves,* 2 M. & S., 60; 17 Ves., 304; Wills, 390. A by-law cannot be enforced by disfranchisement; and suspension is disfranchisement *pro tanto.* A. & A., §§ 362–3; 2 Kent, 298. Minor offenses ought to be punished by penalties imposed, and not by disfranchisement. 2 Potter on Corp., §§ 726, 728; 1 id., § 82, and cases there cited. An action of debt to enforce

the fine was the proper remedy. Charter, sec. 12. (5) This by-law contravenes the right which the law gives every citizen to trade in all public places in the state, and is therefore void as contrary to the law of the land. Field, § 301, and cases there cited; 24 Barb., 575. (6) The power of *amotion* belongs to the corporation only, and cannot be delegated to the board of directors. *Rex v. Richardson*, 1 Burr., 539; *State ex rel. Graham v. Chamber of Commerce*, 20 Wis., 63, 73; *Dickenson v. Chamber of Commerce*, 29 id., 45. 2. The facts in evidence do not show that the relator has violated the rule in question. 3. The matter had been once adjudicated, and could not be tried again. 4. The county court had no jurisdiction of the cause, only one of the defendants having made the affidavit and petition for a change of venue. *Wolcott v. Wolcott*, 32 Wis., 63; *Bank v. Tallman*, 15 id., 92–94. 5. The charter requires the board of directors to be composed of the president, vice-presidents, secretary and nine directors; and there were only six votes for the suspension — not a majority.

*N. J. Emmons* and *L. S. Dixon*, for the respondents:

1. The venue was properly changed. R. S., sec. 2625; *Bank of Scotland v. Tallman*, 15 Wis., 92; *Wolcott v. Wolcott*, 32 id., 63. 2. The first proceedings to punish the relator having been abandoned, and being confessedly void, no plea of former conviction can be grounded thereon. *People v. Barrett*, 1 Johns., 66; Wells' Res Adjudicata, ch. XXVI, p. 318. 3. If the rule was valid, the court cannot review the *evidence* as to the relator's guilt. *Black and White Smiths' Society v. Vandyke*, 2 Whart., 309; *Comm. ex rel. v. Pike Ben. Society*, 8 W. & S., 247; *Society for the Visitation, etc., v. Comm. ex rel. Meyer*, 52 Pa. St., 125; *Rex v. Griffiths*, 5 Barn. & Ald., 731 (7 E. C. L., 243); *Gregg v. Mass. Med. Society*, 111 Mass., 185; *People ex rel. Thacher v. N. Y. Com. Association*, 18 Abb. Pr., 271; High on Ext. Rem., §§ 290, 292, 301, 305; A. & A. on Corp., § 693, and numerous cases cited in note 6. 4. The rule is valid, being authorized by the terms of the charter, ap-

propriate to the general objects of the corporation, and not forbidden by any general principle of law. Limited and partial restraints of trade, proceeding from good motives and considerations, are sanctioned by all courts. *Kellogg v. Larkin*, 3 Chand., 133; *Mitchel v. Reynolds*, 1 P. Wms., 181; *Pierce v. Fuller*, 8 Mass., 223; *Alger v. Thacher*, 19 Pick., ,51; *Chappel v. Brockway*, 21 Wend., 158; *King v. Company of Free Fishermen*, 8 Durnf. & E., 352, 356; *King v. Company of Free Fishers, etc.*, 7 East, 353; *Adley v. Whitstable Co.*, 17 Ves., 315; *Adley v. Reeves*, 2 M. & S., 52, 58; *Adley v. Whitstable Co.*, 19 Ves., 304. So far as by-laws in restraint of trade are concerned, the rulings and dicta against them have been confined to *municipal* corporations. A. & A. on Corp. (10th ed.), §§ 335–40; Dillon on M. C., §§ 258–64, and notes; Field on Corp., § 297, and notes; *Barling v. West*, 29 Wis., 307; *Hayes v. Appleton*, 24 id., 542; *Clason v. Milwaukee*, 30 id., 316; *King v. Tappenden*, 3 East, 186; *King v. Coopers' Co., etc.*, 7 Term, 543; *Butchers' Co. v. Morey*, 1 H. Bl., 370. As to private corporations, counsel cited A. & A., § 357; *Philips v. Bury*, 2 Term, 351–2; *People ex rel. Gray v. Medical Society*, 24 Barb., 570, 579; *People ex rel. Bartlett v. Medical Society*, 32 N. Y., 187; *People ex rel. Corrigan v. Y. M. Father Matthew Ben. Society*, 65 Barb., 357; *People ex rel. Godwin v. American Institute*, 44 How. Pr., 468; *People ex rel. Schmitt v. St. Franciscus Ben. Soc.*, 24 id., 216; *Parkinson's Case*, Carthew, 92; *Barrows v. Medical Society*, 12 Cush., 402; *Franklin Ben. Association v. Commonwealth*, 10 Barr, 357; *Society, etc., v. Commonwealth*, 52 Pa. St., 125–32; *People ex rel. Thacher v. N. Y. Com. Association*, 18 Abb. Pr., 271; *People ex rel. Page v. Board of Trade*, 45 Ill., 112; *Dickenson v. Chamber of Com.*, 29 Wis., 45. These cases cover the objection that the by-law is *unreasonable*, as well as that founded upon its being in restraint of trade. Counsel further cited *White v. Brownell*, 3 Abb. Pr., N. S., 318, where the body of which the plaintiff was a member was *un-*

*incorporated*, and its constitution was treated as a *contract;* and they contended that the same principles were applicable to a corporation like this chamber of commerce, whose charter does not create any rights or privileges as to admission to membership, uncontrolled by the mere discretion of the association. See *White v. Brownell*, on appeal, 4 Abb. Pr., N. S., 162, per DALY, J. See also *People ex rel. Rice v. Board of Trade*, 80 Ill., 134. 5. If the by-law is valid, then, even if there were irregularities in the proceedings for suspension of the relator, the *mandamus* will be denied; it being apparent that he has been guilty of a violation of duty, and might again be expelled or suspended, in a regular manner. *Ex parte Paine*, 1 Hill, 665; *People v. Med. Society*, 32 N. Y., 187; Shepard's Notes to *Fish v. Weatherwax*, 2 Johns. Cas., 217–58; Buller's N. P., 207; *King v. Mayor, etc.*, 2 Durnf. & E., 177; *King v. Mayor, etc.*, 1 Dowl. & R., 389; *Rex v. Fetherstonhaugh*, cited 2 Burr., 530; *Meister v. Anshei Chesed Cong.* (Sup. Ct. of Mich.), 6 Rep., 687. 6. The case is not one in which the court has jurisdiction to interfere by *mandamus*. The remedy is confined to public corporations or those in which the right to membership is gained by heritage, or qualification prescribed by law; and jurisdiction cannot properly be assumed over the discipline of a purely voluntary corporate body. *People ex rel. Rice v. Board of Trade*, 80 Ill., 134; *Fisher v. Board of Trade*, id., 85; *Baxter v. Board of Trade*, 83 id., 146; *Sturges v. Board of Trade*, 86 id., 441. The jurisdiction of the board of directors of the respondent chamber in the discipline of its members is *visitorial* in its nature (2 Potter on Corp., §§ 741–6), and the sentence of the visitor on subjects within his jurisdiction is final, and cannot be reviewed by the courts. A. & A. on Corp., § 693, and ch. XIX generally; id., § 704; *Philips v. Bury*, 2 Durnf. & E., 246; *Allen v. McKeen*, 1 Sumn., 277–296; *Amherst Academy v. Cowls*, 6 Pick., 427; *Dartmouth College v. Woodward*, 4 Wheat., 518; *Att'y Gen. v. Foundling Hospital*, 2 Ves., 41.

In a supplemental brief, respondents' counsel reviewed the cases cited for the appellant as to the invalidity of the by-law in question, and contended that they were all inapplicable or tended to support such by-law.   To the point that there was both a fine *and* suspension, they answered (1 that the.by-law provided for both, and there is no authority which pronounces a by-law invalid merely because it provides a double punishment; and (2), that while the fine could doubtless be collected by a common-law action, yet, under sec. 7 of the charter, a refusal to pay the fine .might be treated as " conduct meriting suspension," as was in fact done in this case.   To the point that the suspension was not by an affirmative vote of a majority of the whole board, they answered that, in the absence of any provision in the charter on the subject, a majority of the board were a quorum, and a majority of that quorum was sufficient to convict.   A. & A., §§ 501--5.

*Mr. Orton*, in reply, argued, among other things, that in this country the visitorial power, in respect to corporations generally, whether public or private, is in the state, and is exercised through the courts, and in cases like the present is exercised by means of the writ of *mandamus*.   Potter on Corp., §§ 741, 744; *State ex rel. Graham v. Chamber of Com.*, 20 Wis., 73.

LYON, J.   We think the place of trial was regularly changed from the circuit to the county court, and that the latter court had jurisdiction of the case.   Langson, who made the affidavit for such change, was the secretary and a director of the chamber of commerce, and a defendant in the action.   He swears in such affidavit that he makes the same, and prays for the change, on behalf and at the request of all the defendants; and all of them moved, by their attorney, for such change. The case is clearly within the rule of *Wolcott v. Wolcott*, 32 Wis., 63, and *Rupp v. Swineford*, 40 Wis., 28.

The visitorial or superintending power of the state over

corporations created by the legislature will always be exercised, in proper cases, through the medium of the courts of the state, to keep those corporations within the limits of their lawful powers, and to correct and punish abuses of their franchises. To this end the courts will issue writs of *quo warranto*, *mandamus* or injunction, as the exigencies of the particular case may require; will inquire into the grievance complained of, and, if the same is found to exist, will apply such remedy as the law prescribes. Every corporation of the state, whether public or private, civil or municipal, is subject to this superintending control, although in its exercise different rules may be applied to different classes of corporations. The cases in this court are very numerous in which such control has been sanctioned and exercised. In one of them, this court sent its peremptory mandate to the chamber of commerce of Milwaukee, the principal respondent in this action, commanding the restoration of a member who had been unlawfully suspended. *State ex rel. Graham v. The Chamber of Commerce*, 20 Wis., 63. In another case, it adjudicated the validity of a by-law of the chamber, for the violation of which a member was threatened with expulsion or suspension. *Dickenson v. The Chamber of Commerce*, 29 Wis., 45.

In the light of these judgments we cannot accept the doctrine, which seems to have received the sanction of the supreme court of Illinois in *People ex rel. Rice v. The Board of Trade of Chicago*, 80 Ill., 134, that the power of such corporations to enact by-laws is unlimited, and that the courts will not interfere with the enforcement of any by-law thus enacted. The case seems in conflict with earlier decisions of that court, and we are not aware that the court has reasserted any such doctrine, although it has since considered several cases involving the legality of the proceedings of the same board of trade. See *Fisher v. The Board of Trade of Chicago*, 80 Ill., 84; *Sturges v. The Same*, 86 Ill., 441; *Baxter v. The Same*, 83 Ill., 146. True, these were equity cases, in which the respective

complainants sought to restrain the board from expelling them, or to compel it to restore them after expulsion; yet the doctrine of *The People ex rel. Rice v. The Board of Trade*, *supra*, is referred to hypothetically in the opinions of the court, and no mention whatever is made of that case. Whether that learned and able court adhere to that doctrine or not, we are unable, as at present advised, to adopt it as the law of this state.

We now proceed to an examination of the record before us. The return of the respondents to the alternative writ of *mandamus*, and the answer of the relator to such return, have been carefully examined, and we are unable to find in either pleading an averment of any material fact which is not sufficiently stated in the amended relation. We think both of them might safely be expunged from the case without detriment to either party.

Under a familiar rule of law, a demurrer to the return to a *mandamus* reaches back to the relation. *State ex rel. Cothren v. Lean*, 9 Wis., 279; *State ex rel. Burns v. Supervisors*, etc., 34 Wis., 169. This is on the principle that, notwithstanding the defect of the pleading demurred to, the court will give judgment against the party whose pleading was first defective in substance. *Babb v. Mackey*, 10 Wis., 371; *Ferson v. Drew*, 19 Wis., 225, and cases cited. Hence, the demurrer to the relator's answer reaches back and must be treated as a demurrer to the amended relation. The county court evidently so considered it, and must have held that the relation fails to show facts which, if true, entitle the relator to a *mandamus*. Otherwise that court would not have given final judgment against the relator on the demurrer.

The question to be determined is, therefore: Are sufficient facts stated in the amended relation to show that the relator is entitled to be reinstated as a member of the chamber of commerce, from the privileges of which the board of directors has suspended him?

To determine this question, it is not necessary to define the precise limits of the power of the court in the exercise of its control over corporations, or to lay down any general rules as to how far the courts will go in reviewing corporate action. This will not be attempted. It is sufficient for the purpose of this case to say, that, if it appears from the relation that the relator was duly notified of the charge preferred against him, and had a fair trial before the board of directors; if the testimony tended to prove the charge; if the former proceeding against him for the same offense is a nullity; and if the rule or by-law under which he was prosecuted, convicted and suspended from membership, is a valid regulation of the chamber — then the relation fails to show that the relator is entitled to be reinstated.

1. The relator had due and timely notice of the charge against him, and of the time appointed for his trial. He appeared before the board of directors in person and by counsel, cross-examined the witnesses called by the prosecution, produced witnesses in his own behalf, who were sworn and testified, and his counsel argued his case to the board. It satisfactorily appears that he was tried fairly, and in all respects in accordance with the rules of the chamber.

2. The testimony is made a part of the relation, and there was abundant proof tending to show that the relator had committed the offense charged against him. He was convicted of the offense, and the penalty imposed was that prescribed by the rules.

It should be observed that it is doubtful, to say the least, whether in such a case the court will look into the testimony for any purpose. But the exigencies of this case do not require a determination of that question.

3. The relation shows that the first proceeding against the relator was without notice, formal complaint or trial, and was had in his absence. Such a proceeding is not only irregular but is utterly void. Moreover, the board of directors, when

so advised, annulled the whole proceeding and restored the relator to membership.

Should a magistrate, on being told that a person had committed an assault and battery, enter in his docket a judgment convicting such person of that offense, and imposing a fine upon him therefor, without formal complaint, process, arrest, appearance or trial, such judgment would be a nullity, and would constitute no bar to a regular prosecution for the offense. The same principle applies here. The first void proceeding against the relator is no bar to a subsequent regular proceeding for the same offense.

4. The only remaining question to be considered is, whether the rule of the chamber under which the proceedings were had against the relator, is valid. The rule reads as follows: "Members of the chamber of commerce are hereby prohibited from gathering in any public place, in the vicinity of the exchange room, and forming a market for the purpose of making any trade or contract for the future delivery of grain or provisions, *before the time fixed* for opening the exchange room for general trading, or *after the time fixed for closing the same*, daily; and any member who shall make any trade or contract in the manner herein prohibited, shall be deemed to have violated this rule, and he may, therefor, be fined by the president in a sum not exceeding five dollars for each and every such offense, and shall be liable to such additional discipline as the board of directors may determine; and any member refusing or neglecting to pay any such fine shall be suspended by the board of directors from all privileges of the association during the time that such fine shall remain unpaid."

The more material objections urged against the validity of this rule (and the only objections which it is deemed necessary to consider) are: *first*, that it is not competent for the chamber to restrict the right of its members to assemble and make contracts for the future delivery of grain or provisions

when and where they choose; *second*, that the chamber cannot lawfully delegate the power of suspension or expulsion to the board of directors; and *third*, that the rule is void for uncertainty, in that it fails to define what is a "public place in the vicinity of the exchange room," and what constitutes "forming a market."

The respondent chamber of commerce, although theretofore organized under chapter 132 of the General Laws of 1858 (R. S. 1858, 490), was specially incorporated by chapter 158, Private and Local Laws of 1867. That act was amended by chapter 39, Laws of 1877. The charter, as contained in these acts, confers upon the chamber power to make such rules and by-laws, and to alter the same from time to time, "as may seem proper and necessary for the good government of the corporation hereby created; such rules and by-laws not to contravene the laws of this state or of the United States." Section 1, ch. 158. Section 6 of that chapter provides that "the said corporation shall have power to admit and to suspend or expel members, as it may see fit, *in manner to be prescribed by the rules and by-laws.*" And section 9, as amended by the act of 1877, contains the following: "Said corporation shall elect, in the same manner and at the same time prescribed for the election of other officers, nine directors, who, together with the *ex officio* members of the board hereinafter designated, in addition to the performance of such other duties as may be assigned to them in the rules and by-laws, shall investigate complaints against members, and when sitting in such capacity shall have power to examine witnesses under oath, to be administered by the presiding member; and when, in their judgment, any member has been proven guilty of conduct meriting suspension or expulsion, they may suspend or expel such member." The *ex officio* members of the board thereinafter designated are the president, vice presidents (of whom there are two), and secretary.

The objection that the chamber has no power to make a

rule or by-law which prohibits its members from meeting when and where they please, and then and there making contracts for the future delivery of grain or provisions, is based upon the alleged positions, that such a rule or by-law is not for the good government of the chamber, and, therefore, *ultra vires;* and further, that the same is unnecessary and unreasonable, and operates as an unlawful restraint upon trade.

We cannot concur in these positions. Regarding the rule under consideration merely as a police regulation, enacted for the purpose of affording the members of the chamber of commerce free and convenient ingress and egress to and from the daily meetings of the chamber, and to prevent the confusion and disturbance in the public places near its exchange room which might result from the unlimited right of the members to trade in those places, we could not hold that the rule in that behalf may not be proper for the good government of the chamber, or that it imposes an unlawful restraint upon trade, or is unreasonable or unnecessary. But it is probable that the rule was enacted for other than mere police purposes. It may be that experience had shown that the unrestricted right of the members to form a market at the times and in the places specified in the rule, for the purpose of making the class of contracts therein mentioned, tended to promote irregular transactions by persons not members of the chamber and not amenable to its rules.

In the preamble to its rules the chamber declares its object to be, "to promote just and equitable principles in trade, to correct abuses, to establish and maintain uniformity in the commercial usages of the city, to acquire, preserve and disseminate valuable business information, and to support such regulations and measures as may advance the mercantile and manufacturing interests of the city of Milwaukee." These are laudable objects, and we cannot say that none of them are promoted by the rule under consideration.

We may conclude our remarks on this subject with a single

additional suggestion. The testimony taken before the board of directors on the trial of the relator is made a part of the relation. On that trial the relator gave evidence tending to prove that nearly all of the time contracts mentioned in the rule are wager or gambling contracts, and therefore void. If that proposition were proved, it would be difficult to hold that a rule which operates as a restraint upon the making of such contracts is an unlawful restraint upon trade. In that case, if it is a restraint, the rule and the statute are in entire harmony.

The next objection to the rule is, that the chamber cannot lawfully delegate to its board of directors the power of suspension or expulsion. The learned counsel for the relator relies upon the case of *The State ex rel. Graham v. The Chamber of Commerce of Milwaukee*, 20 Wis., 63, to support this objection. It was there held that the power of expulsion was in the body of corporators, and could not, under the law as it then stood, be delegated to the board of directors. That case arose under chapter 132, Laws of 1858, before cited, which provided merely that corporations organized under it " shall have the right to admit as members such persons as they may see fit, and expel any members as they may see fit." Sec. 2. The ruling was undoubtedly correct; but the law has since been changed, and the statutes above cited confer upon the board of directors the power of suspension or expulsion in proper cases (sec. 9, *supra*), and also upon the chamber power to prescribe rules and regulations for admitting and expelling members (sec. 6). The statute also gives the chamber very extensive authority in respect to the enactment of rules and by-laws, and the conferring of powers thereby upon the board of directors.

As the law now is, we do not doubt that the rule under consideration legally confers upon such board the power, and imposes upon it the duty, of suspending a member convicted under it, who refuses to pay the fine imposed upon him by the president.

The last objection is, that the rule is void for uncertainty. We do not think so. We think the language of the rule is reasonably explicit, and that there should be no difficulty in understanding what is a "public place in the vicinity of the exchange room," or what acts constitute the forming of a market there, within the meaning of the rule. The rule doubtless means a place in that vicinity public to all the members of the chamber, and includes the hall or passage way leading from the street to the exchange room. "Forming a market" evidently means conducting negotiations and making contracts of sale. Perhaps the rule might have been better drawn, but its meaning is as clear as that of many penal statutes which the courts constantly enforce.

Upon the whole case, we conclude that the relation fails to state facts showing that the relator was unlawfully suspended.

The judgment of the county court denying a peremptory *mandamus* and dismissing the relation, must be affirmed.

*By the Court.* — Judgment affirmed.