## ELBRIDGE GODDARD, Appellant, v. MERCHANTS' EXCHANGE, Respondent.

### June 22, 1880.

1. That the by-law of a corporation establishes a rule different from the common-law rule does not make it invalid.

2. A by-law of a board of trade which provides that, "on all sales of grain in bulk on elevator receipts, the buyer shall pay the first two days' storage, unless otherwise specified, at the time of sale," is not invalid, and may be enforced.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed.*

PATRICK & FRANK, for the appellant: By-laws, to be valid, must not be inconsistent with the general principles of the common-law as recognized in this State, nor contrary

to general public policy or common right. — 3 Salk. 76 ; *Williams* v. *Railroad Co.*, 28 Eng. Law & Eq. 439 ; *Hayden* v. *Noyes*, 5 Conn. 391 ; *Taylor* v. *Griswold*, 14 N. J. L. 222 ; *Dunham* v. *Trustees*, 5 Cow. 465 ; *Piscataqua* v. *Carter*, 20 N. H. 246 ; *The State et al.* v. *Merchants' Exchange*, 2 Mo. App. 101. Where the vendor, in possession of personal property, sells for full value, a warranty of the title is implied, *in the absence of an agreement to the contrary.* — *Robinson* v. *Rice*, 20 Mo. 229 ; *Shell* v. *Stevens*, 50 Mo. 375 ; *Dryden* v. *Kellogg*, 2 Mo. App. 87. " Proprietors of the elevator are the agents of the various parties for whom they act."— *Cushing* v. *Breed*, 14 Allen, 380. " The grain elevator company holds grain stored therein as agents for the owners of the grain."— *Warren* v. *Millikin*, 57 Me. 97 ; *Young* v. *Miles*, 20 Wis. 623 ; *Kimberly* v. *Patchin*, 19 N. Y. 332.

OVERALL, JUDSON & TUTT, for the respondent : The by-law is not invalid. It is within the purpose of the charter of the corporation. — *The People ex rel.* v. *Underwriters*, 14 N. Y. 248 ; *The People ex rel.* v. *Board of Trade*, 45 Ill. 113 ; *s. c.* 80 Ill. 133 ; *The People ex rel.* v. *Commercial Bank*, 18 Abb. Pr. 271 ; *Dickenson* v. *Chamber of Commerce*, 29 Wis. 45 ; *The State ex rel.* v. *Chamber of Commerce*, 47 Wis. 679 ; *The State ex rel.* v. *Merchants' Exchange*, 2 Mo. App. 100. It is not inconsistent with the common law.— *Thorne* v. *Prentiss*, 83 Ill. 99.

HAYDEN, J., delivered the opinion of the court.

This is a petition asking for an injunction to restrain the Merchants' Exchange of St. Louis and its board of directors from censuring, suspending, or expelling the plaintiff, or from depriving him of his membership in the exchange, for his refusal to pay Meyer, another member of the exchange, a balance decided to be due to the latter for the first ten days' storage on certain wheat bought, upon the exchange, by the plaintiff from Meyer. There was an agreed

statement of facts, the material parts of which are given in this opinion.

The Merchants' Exchange is a corporation, incorporating a voluntary association previously in existence, composed of merchants who habitually meet at certain rooms in St. Louis for purposes which they have in common, by which their business transactions are facilitated. The preamble of the voluntary association shows that it was organized " to inculcate just and equitable principles of trade ; establish and maintain uniformity in the commercial usages of the city ; acquire, preserve, and disseminate valuable business information, and with a view to avoid and adjust, as far as practicable, the controversies and misunderstandings which might arise between individuals engaged in trade, when they have no acknowledged rules to guide them by."

It appears that the rules and by-laws of the defendant, the Merchants' Exchange, have been amended from time to time ; and those pertinent to the present question are given below. Nearly all the grain sold in the St. Louis market is sold on the floor of the exchange. Accordingly, millers, to purchase the necessary grain for their business, find it essential to be represented there. The bulk of the grain sold is stored in elevators, in which the grain received at the city is placed for storage and preservation until disposed of, by sale or otherwise, the grain thus received being separated into grades, which are kept apart and not mingled with inferior grades. The depositor of grain gets a receipt, which calls, not for his identical grain, but for the same quantity of grain of the same quality. The elevator's charge for the storage of wheat in bulk is one and a half cents per bushel for the first ten days, or any part of ten days, and a half cent a bushel for each subsequent period of ten days, or part thereof, the first charge embracing elevating, storing, and delivering. Before the ninth day of January, 1878, the seller in St. Louis, whether on the floor of the exchange or elsewhere, of grain in bulk in eleva-

tor, by the uniform practice or custom, paid the ten days' storage-charge and delivered to the purchaser the grain sold for the market price, free from any charge or lien ; and this was done, whether at the date of such sale the ten days had expired or not.

On January 9, 1878, due notice having been given, the following rule was regularly adopted by the members of the exchange: "Sect. 26. Rule 7. On and after the tenth day of January, 1878, on all sales of grain in bulk on elevator receipts, the buyer shall pay the first ten days' storage, unless *otherwise specified at the time of sale.*" It appears that this rule, though opposed by the plaintiff and a minority, was put in force, and has been uniformly construed by the exchange as a part of the contract, in cases of sales made upon the floor of the exchange of grain in bulk on elevator receipts, in the absence of an agreement to the contrary.

The sale in question was made by Mr. Meyer to the plaintiff on the 19th of August, 1878. It was made on the floor of the exchange, and neither party said anything as to the payment of the first ten days' storage. This storage-charge the plaintiff refused to pay to Meyer, and deducted the amount of it from the price, being the ruling market price for the grain he bought, and paid the sum so deducted to the elevator company, claiming that he was entitled in law to do this, on the ground that the above rule was invalid. Accordingly, Meyer preferred charges against the plaintiff, and, the board of directors proceeding under their rules, this suit was brought as stated. The bill was dismissed below.

Waiving and not deciding the question whether injunction is the proper remedy, we pass directly to the principal question, since its decision is decisive of the case : whether the above section of the by-laws of the Merchants' Exchange was valid, and, in the absence of express agreement to the contrary, became a part of the contract. Since both parties

are in accord up to a certain point, it is unnecessary to lengthen this opinion by stating all the steps of the argument. It is said on the defendant's part that this by-law does not attempt to interfere with the right of members of the exchange to make such contracts as they please as to the payment of these storage-charges. But it is evident that this does not meet the objection or answer the argument of the plaintiff. His complaint is that he is bound by the rule of the common law that the vendee is not subject to the charges arising from acts done previously to the delivery of the goods. The effect of many, indeed of most, rules of commercial law can be avoided by adapting the terms of the contract to their avoidance. If the contract made is not against public policy, or otherwise positively objectionable, it may be enforced according to its special terms. This fact does not deprive the law, the operation of which is sought to be avoided, of its force as law; nor, when its validity as law is in question, is it a pertinent or valid argument that the law does not prevent the parties from so acting that the law will not operate in a given case or cases. It is precisely of that force which, in spite of this liberty of contracting, is still left in operation — namely, of its force as a general rule, compulsory as such on the parties — that the plaintiff complains. He insists that the force of a rule cannot be given to this provision, and that the burden of constant action cannot be imposed on him to accomplish a result which the law of the land accomplishes. Again, the establishment of a rule tends always to produce action in harmony with that rule, and indeed the defendants here offered to prove on the trial below that the market price of grain sold on the exchange immediately adjusted itself to this rule, the seller demanding and the buyer paying less by the amount of the storage-charge.

Thus, the plaintiff's position may be sound in spite of the liberty given to avoid the rule. Whether it is sound depends on other tests. The character of the rule must be

considered, and the purpose for which it is made. It was intended to be binding on members of the exchange, and to affect sales of grain in bulk on elevator receipts — certainly those made upon the floor of the exchange. Within the sphere of its operation, the rule, if valid, has the effect of positive law, not of custom; and the analogy drawn from cases where the law forbids its rules to be overthrown by evidence as to contrary customs does not exist. One of the principal reasons why usage is not received to contradict rules of law is, that certainty would cease to exist in the law in the degree in which usage was allowed to prevail. But by-laws must be certain, must be directed to all within the sphere of their operation, and must operate equally. The law is not warped by them; and if they are not unreasonable, or contrary to the policy of the law, the fact that they may introduce a new rule which is not the rule of the common law does not militate against their validity. The State confers legislative powers on the corporators within certain limits, and this power is to be applied locally and to special circumstances. The policy of the law of the State cannot be infringed but within this restriction : the corporation may make rules, applicable locally, which are not the rules of the common law, provided the rules so made are within the scope of the charter powers. Here, the rule of the common law that, in the absence of agreement to the contrary, the seller pays the charges accruing before delivery upon personal property of which he is in possession embodies no particular policy of the law. There is no element in it which pronounces a contrary practice to be illegal. The rule is merely the logical result of the seller's ownership and of his contract with the warehouseman. It is applied as a rule to determine controversies; and as to its application, under peculiar circumstances, as cases cited by the plaintiff show, there may be doubt.

The practice of purchasing grain upon elevator receipts, where the buyer does not bargain for or get the identical

property of the seller, and where the elevator company insists that storage-charges which may be in part unearned, so far as the seller is concerned, shall be paid, introduces new complications into what was before a simple transaction. The common law itself often changes in view of similar innovations, and the plaintiff is not at liberty to argue as if the law insisted on an unbending rule. The buyer contracts in view of the practice of the elevator company as well as the seller does, and of the fact that the storage-charges may cover time when the grain is the buyer's property. Surely the seller might not unreasonably contend that, in view of these facts, there would arise an implied assent on the part of the buyer, and that the general rule of law would not apply. It is said, indeed, that the contract for storage is the seller's contract, not the buyer's; but the view is plausible, perhaps sound, that the buyer is liable for storage during his ownership, even though such ownership is unknown to the warehouseman, where the buyer allows goods to remain in store after his purchase. A decided case would sustain the seller's theory here. *Lehman* v. *Skelton*, 46 Ala. 310.

However this may be, it appears that there was a basis for the rule. Not only did the by-law tend to prevent controversies, but it is evident that its purpose was to establish an equitable rule of trade. Its adoption was further reasonable in view of the fact that there had previously been no settled rule upon the subject, but a mere usage by which, as the case shows, the seller, by the custom of the St. Louis market, paid for the storage of the entire ten days, though during a part of that time the grain might have been in the hands of the buyer. Such a usage, however well settled, was liable to give rise to controversies, to produce misunderstandings and complaints of injustice, and, as the above cited case proves, it might fairly have been contended that the usage was contrary, in some of its aspects, to the common law. In the power conferred upon

the Merchants' Exchange by its charter to make such reasonable changes in its rules and such additional by-laws as might be necessary, ample authority is found, in connection with the purpose for which the corporation was created, to make the by-law in question.

The analogies of the adjudged cases are, we think, against the plaintiff, and in favor of the view now taken. See *Dickenson* v. *Chamber of Commerce*, 29 Wis. 48; *The State ex rel.* v. *Chamber of Commerce*, 47 Wis. 670; *The People ex rel.* v. *New York Association*, 18 Abb. Pr. 271; *The People ex rel.* v. *Board of Trade*, 45 Ill. 113; *The People ex rel.* v. *Board of Trade*, 80 Ill. 134; *The State ex rel.* v. *Merchants' Exchange*, 2 Mo. App. 100.

It is complained that the by-law in question contravenes the Fourteenth Amendment of the Federal Constitution, and also various provisions of the Constitution of this State; but, in the view taken by this court, the basis of the argument upon these points does not exist. If the rule, as adopted, became a part of the contract, the plaintiff was certainly not compelled to pay the debt of his vendor. To assume, moreover, that the debt is in all cases the debt of the vendor, is to assume a proposition at least disputable, and which, therefore, might fairly form the subject of a by-law. The plaintiff, in becoming a member of the association, gave up something of his rights, and submitted himself to that legislative discretion which, in their sphere, is a characteristic of all bodies upon which is conferred the power of making rules.

The judgment is affirmed. Judge BAKEWELL concurs; Judge LEWIS is absent.