| 58 | 399 |
| 62 | 49 |
| 62 | 543 |

## Murry Nelson v. Board of Trade et al.

1.   PUBLIC WAREHOUSES—*Charges for Storage of Grain.*—Under the laws of this State the charges that may be made for the storage of grain in public warehouses are limited, but there is no law depriving warehousemen of the right to make their 'charges less than the maximum fixed by law.

2.   BOARD OF TRADE—*Discipline of Members—Judgment Conclusive.*— Where the rules and regulations of a voluntary society provide for the disciplining of members and for a method of hearing as to and determining whether offenses have been committed, the judgment of such tribunal is final and conclusive; the rules, regulations and judgment of such society not being opposed to the law of the land nor in disregard of its charter or by-laws.

3.   SAME—*Membership in, a Property Right.*—The membership in the Board of Trade is a property right.

4.   SAME—*Power to Discipline Members—Proceedings Not to be Inquired into Collaterally.*—Where a person becomes a member of the Chicago Board of Trade and agrees to be bound by its rules and regulations, among which are by-laws for the disciplining of members and providing for a tribunal before which they may be tried, and where

such tribunal proceeds regularly in accordance with its own rules, they being not contrary to public policy or to the law of the land, and the procedure not being *mala fides* or repugnant to natural justice, the merits of a judgment thus rendered will not be inquired into collaterally.

5. CORPORATIONS—*Courts of Law Control the Power of Amotion.*— Courts of law, acting by the writ of mandamus directly upon corporations, exercise a control over the power of amotion and may and do investigate proceedings for the amotion of corporate members.

6. SAME—*When Courts of Law will Interfere with the Corporate Tribunal for the Discipline of Members.*—Where the action of a tribunal created by the by-laws of a corporation for the discipline of members is violative of the rules of the corporation, in disregard of the rights of members thereunder or of the law of the land, courts will interfere to compel the restoration of the corporate franchise of which a member has been improperly deprived.

7. SAME—*Tribunal for the Discipline of Members a Quasi-judicial Body.*—The tribunal of a private corporation created by the agreement of its members is a quasi-judicial body; but it is not, even in respect to the matters by consent committed to its charge, a court of superior jurisdiction. It acts judicially, but with a limited and inferior jurisdiction, and is bound to proceed in conformity with the rules under which it exists and acts.

8. SAME—*Agreement to be Bound by By-laws.*—A person in becoming a member of a corporation and agreeing to be bound by its laws, does not agree to submit to acts violative of the rules by which he and all other corporators are bound.

9. SAME—*Rules for Construing Statutes—Applicable to By-laws.*— The rule that the words of a statute are to be interpreted in their ordinary and popular sense, *uti loquitur vulgus,* is applicable to the by-laws of private corporations.

10. SAME—*Construction of By-laws—Bad Faith.*—The words "bad faith" imply a breach of faith—a willful failure to respond to a plain and well understood obligation. They mean not only the existence of an honorable obligation, but a dishonorable refusal or neglect to comply with the same; they imply much more than mere inability to respond.

11. SAME—*Construction of By-law Permitting Expulsion of Members for Acts of Bad Faith.*—The directors of the Chicago Board of Trade have not the power to declare that "bad faith and dishonorable conduct" which is nothing of the kind; the rule permitting expulsion for acts of bad faith is not one by which members may be expelled at the pleasure of the board, without reference to the character of the deeds it may see fit to designate as bad faith and dishonorable conduct.

12. COURTS OF LAW—*Power to Examine Proceedings of Corporations.*—Where property rights are involved, courts have the power to examine the proceedings of the quasi-judicial tribunals of corporations such as this, for the purpose of seeing if the action of such body has been in substantial accordance with the law and rules provided for its government.

**Mandamus,** to compel the restoration of a suspended member of the Board of Trade, etc. Appeal from the Superior Court of Cook County; the Hon. HENRY W. FREEMAN, Judge, presiding. Submitted at · the March term, 1895, of this court. Reversed and remanded. Opinion filed April 22, 1895.

## STATEMENT OF THE CASE.

This was a proceeding to compel, by writ of mandamus, the restoration of the petitioner to the privileges of a member of the Board of Trade; he having been by order of its directors suspended, indefinitely.

The petitioner alleges the ownership by the Board of Trade of real property in the city of Chicago of the value of about $3,000,000, and the receipt therefrom of an annual net income in the way of rents of over $54,000; that the value of a membership in said board is $800; that trading in cereals and other products is carried on upon its floor and under its superintendence, the aggregate amount of such trading being annually very large. That the value to the petitioner of his membership is very greatly impaired in consequence of the denial to him of the privileges of membership, one of which is the right and opportunity to go upon its floor and there carry on commercial transactions with its members; that petitioner is the manager of and a large stockholder in a corporation known as the National Elevator Company, engaged in the storage and warehousing of grain. That petitioner does not, nor does he in conjunction with one Wayman, own or control a majority of the stock of said company.

It appears from the petition that it is extremely desirable for grain elevators in the city of Chicago to have the receipts they issue for grain by them held in store, regular upon the Board of Trade; that is, that upon such board the delivery of such receipts shall be by the members thereof accepted as a delivery of the grain represented thereby. The petition further sets forth—

That for many years, the said The Board of Trade of the City of Chicago adopted rules from time to time intended to make safe purchasers or holders of warehouse receipts

issued by warehousemen at Chicago, and in or about the year 1882 a rule was in force or then formulated which provided that all deliveries upon grain contracts should be made by tender of regular warehouse receipts; that by the term "regular" it was intended to define receipts issued by houses in good credit, and in other respects conforming to such regulations as should be prescribed by its board of directors; that the practice had thus grown up, or was thereafter initiated and continued until the month of August of the present year, of requiring from warehousemen in the city of Chicago a bond, with such penalty as should seem proper, and conditioned to protect the holders of receipts issued by such warehousemen, and warehousemen having given such bond were entitled to have their warehouses called regular, and their receipts were recognized by said Board of Trade and generally as representing safe and responsible warehousemen.

That after said corporation known as the Elevator Company was organized, and since its organization, it has maintained and operated a public warehouse of class A; that on or about the 25th day of January, 1890, a license to the same was issued by the Circuit Court of Cook County in accordance with law, in the name of Murry Nelson as manager, and such license has since been and is now in force; that the capacity of said elevator is 1,000,000 bushels, and it now has in store about 738,000 bushels, of which 149,000, of various grades, are owned by it.

That prior to the first day of July, 1893, a bond, with surety, was given by it to the Board of Trade in the penalty of $500,000, conditioned to protect the receipts of said warehouse in the manner hereinbefore stated, which said bond was accepted by said defendant, and has not since been canceled or withdrawn, and a large share of the grain in said warehouse was received after the execution and delivery of said bond.

That on the 13th day of August, 1894, the said board of trade amended a certain one of its rules, known as rule 21, providing the terms and conditions under which the receipts

of grain elevators should be deemed regular on said Board of Trade, among which amendments was a provision that the warehouses, whose receipts should be deemed regular, should charge for the storage of grain not in excess of three-quarters of one cent per bushel for the first ten days or part thereof, and one-quarter of one cent per bushel for each additional ten days or part thereof. And, furthermore, that the proprietors or managers of such warehouses should be required to sell their regular contract grades of grain or flaxseed in the Chicago market only, and shall not ship any grain from any regular warehouse, of which they are proprietors or managers, except those grades which are denominated and understood to be " off grade."

The petitioner further sets forth that the following paper was presented to the owners and managers of elevators for their signatures :

" We, the undersigned, elevator proprietors and managers, agree to apply to have our elevators made regular if the above section of rule 21 as presented to us is adopted by the Board of Trade."

That in the absence from the city of Chicago of your petitioner, and without authority from the directors of said elevator company as individuals, and without a meeting having been held or a vote taken on that subject, said writing was at such request signed on behalf of said elevator company by said Wayman as secretary or treasurer; that the corporate seal of said elevator company was not thereto attached, and your petitioner avers that in signing the same said Wayman departed, although not intentionally, from the suggestions theretofore made to him by your petitioner; that your petitioner did not know of the fact of such signature until after his return to Chicago, which was on or about the 1st day of August, 1894; that he had been unwell for a considerable time prior to his return, and after his return was, for two weeks or more, practically confined to his house and unable to transact business; that it did not occur to him to disown the signature of said Wayman, and, in fact, he was not authorized to

assume so to do on the part of the elevator company; that petitioner is advised and believes that by no shadow of moral obligation or commercial honor was he called upon to disown such act or carry, if he could have done so, the same into effect.

That your petitioner not having had an opportunity to consult with his associate directors, charges were, on or about the 31st of August, 1894, preferred to the board of directors of said Board of Trade against your petitioner, in form as follows:

"CHICAGO, Aug. 31, 1894.

To the Board of Directors of the Board of Trade of the City of Chicago:

GENTLEMEN: The undersigned, chairman of a committee of the association, hereby charges Murry Nelson with an act of bad faith and dishonorable conduct, in not carrying out the terms of an agreement signed by J. B. Wayman, secretary and treasurer of the National Elevator & Dock Co., a copy of which agreement is hereto attached.

Respectfully,

GEORGE R. NICHOLS,

Chairman."

That on the 18th day of September, 1894, your petitioner attended a meeting of the board of directors of said Board of Trade, at which, as your petitioner believes, more than twelve were present; that your petitioner then verbally protested against the taking of any action by said board of directors upon the so-called charge which had been preferred against him, and denied the right of said Board of Trade to cite him to answer.

That after considerable conversation, questioning and answering between your petitioner and the members then present of said board of directors, your petitioner having asked and been denied the privilege of counsel, your petitioner was requested to retire, and on the morning of the following day received by mail a communication from the secretary of said Board of Trade as follows:

"September 19, 1894.

Mr. Murry Nelson:

DEAR SIR: You are hereby notified that at a meeting of the board of directors of the Board of Trade of the city of Chicago, held on the 18th inst., upon the hearing of the complaint made against you by George R. Nichols, chairman, you were found guilty and suspended from the privileges of the Board of Trade of the City of Chicago indefinitely.

Very respectfully,

GEORGE F. STINE, Secretary."

The petition also sets forth the following letter addressed by the petitioner to the Board of Trade while the charges were under consideration:

EXHIBIT C.

CHICAGO, September 3, 1894.

To the President and Directors of the Board of Trade.

GENTLEMEN:—The alleged agreement referred to in the charges against Mr. Wayman and me was signed by James B. Wayman, secretary of the National Elevator and Dock Company.

It was signed by him in perfectly good faith, and there is nothing to show that he, as far as he is able, is not ready and willing to carry it out.

However, through ignorance of his powers, he pretended to bind the corporation to what it could only be bound by a resolution of its board of directors. The alleged agreement is extraordinary, not in the due course of business, and could only be entered into by the corporation in a regular manner consistent with the law.

Neither Mr. Wayman, as secretary, nor I, as president, have the power under the by-laws of the corporation to make any contract unless as so directed by the board of directors.

There is no time mentioned in the alleged agreement, before which and at which the parties signing it agree to apply to be made regular. Both Mr. Wayman and I have stated officially to the committee of the Board of Trade that the National Elevator and Dock Company would prob-

ably apply to be made regular as soon as its directors could be convened and make the resolution necessary for such application.

Neither Mr. Wayman nor I own or control, either singly or together, the majority of the stock, or the votes of the directors of the corporation, and except by counsel and advice we exercise no influence beyond our voting power as directors in the corporation. However strongly we may counsel, singly or together, that the elevator company apply to be made regular under the rules of the Board of Trade, we have no power whatever to compel it.

The alleged agreement by no interpretation can be considered a contract. The Board of Trade is not a party to it; it neither signs it nor by implication agrees to do anything under it. There is no obligation upon the part of the Board of Trade to make regular any of the elevators who do apply. The Board of Trade does not agree to pass the rule, nor any other rule, nor to abide by the rule as passed for any time whatever. To-morrow the Board of Trade may pass a wholly different rule and leave the elevators no remedy. The agreement is not mutual, and there is in it no consideration whatever for the only parties who sign it. Two are the least number who can agree, and here we have only the elevators signing as one party.

No one can complain of failure to perform an agreement unless he is a party to it, and if it were admitted that there was an agreement it nevertheless is true that the Board of Trade is not a party to it.

The only thing it can be claimed is agreed to by the managers of the elevators in the alleged agreement, is that "if the above mentioned section of rule 21, as presented to (them) is adopted by the Board of Trade, that they will apply to be made regular." Nothing is said as to their application being under that rule. They do not agree not to try to obtain the passage of some other rule, and they do not agree, nor is it implied, that they will apply to be made regular at once.

By the widest stretch of imagination the mistake Mr.

Wayman made in exceeding his authority can not be considered to carry with it any implication of "bad faith" or "dishonorable conduct."

Even had he signed a contract he might not be able to carry it out, and even for his failure, were he liable in damages, he could not be said to have done anything "dishonorable" or in "bad faith."

Mere failure to perform a contract can never be considered to be evidence of bad faith or dishonorable conduct. Circumstances beyond the control of a contracting party may make it impossible for him to carry his agreement into effect. Mr. Wayman may be desirous at the present moment that the National Elevator be made regular under the present rule of the Board of Trade, and still not be able to obtain the consent of the directors of that elevator. As a matter of fact, the controlling interest of the National Elevator is held in trust for wards of court in Erie county, Pennsylvania, and accordingly the agents of the elevator company can do nothing whatever not strictly in accord with the law governing trustees, and nothing out of the due and regular course of its daily business without a resolution of its board of directors.

I, as president, could do nothing more than Mr. Wayman, as secretary, in this matter to bind the company, and my sanction or adoption of the act of Mr. Wayman could be disregarded by the directors of the corporation as not binding upon it.

The by-laws of the company state specifically the duties of its officers, and Mr. Wayman's mistake in exceeding his authority is perfectly apparent to have been made in the best of faith. I shall submit to you, gentlemen, directors of the Board of Trade, the by-law under which Mr. Wayman derives his powers, and ask you to consider if he could, under it, make a contract which would lawfully bind the corporation. It is difficult for me to believe that I, a member of the Board of Trade of Chicago almost from its beginning, should be called upon to answer a charge so trivial, groundless and unreasonable as this. I have tried to the best of my

ability, to convey to the minds of the committee before which I appeared, and now to you, gentlemen, the directors, how impossible it is for Mr. Wayman or me to bind the elevator company in this matter. It can not be possible that you, gentlemen, men of business training and wide experience in commercial affairs, should be unfamiliar with the management of corporations to such an extent that you can not appreciate the limitations under which its agents act. It can not be possible that, knowing, as you do, the present impossibility of convening the directors of the National Elevator and Dock Company, who alone can act upon the question of the adoption of the proposition of the Board of Trade, you can arbitrarily and lawlessly take advantage of its agents, Mr. Wayman and myself, whom it is claimed, one by act, and the other by adoption, have bound the company to an agreement which it has failed to perform. To be sure, there is nothing yet to show that any agreement has been made or broken, but such is the charge.

It can not be possible, when due consideration is had of the facts, that the directors will seek to censure Mr. Wayman for his inability to do what it is claimed he agreed to do, when circumstances entirely beyond his control prevent him, either from carrying into effect the supposed agreement, or from disowning and renouncing it. The most that can be said in his disfavor is that he mistook his legal powers, and that, in the strictest system of ethics, has never been accounted a wrong. " Bad faith " and " dishonorable conduct " grow only out of a conscious act of wrongdoing, and it is perfectly evident that Mr. Wayman was entirely unconscious of any intention to act except in the best faith and most honorable manner.

As I have repeatedly stated, officially, to the gentleman who charges me with bad faith and dishonorable conduct, and unofficially to other gentlemen of the board, so that it is a matter of common knowledge, I did not know that Mr. Wayman had signed anything until some time after he had done so, as I was out of the city and out of communication with him. I did not know, and I do not now think, that

what he did sign was an agreement, and accordingly took no steps to disaffirm it. I did not know that what he did sign could be considered an agreement by any one until I was informed by this charge that it was so considered by one person at least. I am not able, if my life depended upon it, to affirm the alleged agreement, and were I to attempt to do so, in order to please any one, the National Elevator and Dock Company would still have the right to disaffirm it.

I am too old a man and have been too long a member of this Board of Trade, in good standing, not to expect from its board of directors at least ordinary courtesy, and treatment consistent with the simple principles of justice. I have been called upon to answer to a charge which would be considered in no court of the land, for a moment, nor by any committee of a club, nor trustees of any church, to require an answer or defense.

As the charge on its face is seen to be baseless and trivial, I esteem it a most grevious wrong to be compelled to make answer to it. The "bad faith" and "dishonorable conduct" lies in compelling gentlemen to answer to a malicious and libelous accusation.

Yours truly,

Murry Nelson.

The petitioner also sets forth the following by-laws of the Board of Trade existing at the time of the preferring of the charges against him:

"When any member of the association shall be guilty of improper conduct of a personal character in any of the rooms of the association, or when any member shall be guilty of a willful violation of any business contract or obligation, and shall neglect or refuse to equitably and satisfactorily adjust and settle the same, or when any member shall willfully neglect or refuse to comply promptly with the award of any committee of arbitration, or committee of appeals rendered in conformity with the rules, regulations and by-laws of the association, or when any member shall violate any of the rules, regulations or by-laws of the association, or when any member shall be guilty of making or

reporting any false or fictitious purchases or sales, or when any member shall be guilty of any act of bad faith or any attempt at extortion, or of any other dishonorable or dishonest conduct * * * he shall be censured, suspended or expelled by the board of directors, as they may determine from the nature and gravity of the offense committed."

"All charges made to the board of directors against any member of the association for any default, misconduct or offense, shall be in writing and in duplicate, and shall state the default, misconduct or offense charged; and the same shall be signed by one or more members of the association, by a business firm, one or more of whose members shall be a member of the association, or by the chairman of a committee of the association."

APPELLANT'S BRIEF, GEO. W. SMITH AND MURRY NELSON, JR., ATTORNEYS.

The court is to say whether or not a by-law is reasonable or within the power of the board to enact. State v. Overton, 24 N. J. L. 440; Hib. Eng. Co. v. Harrison, 93 Penn. St. 264; People v. Wheaton College, 40 Ill. 186; C. P. & P. Co. v. Tilton, 87 Ill. 547.

A member of a corporation can not be deprived of a right or privilege by the enactment of a by-law which conflicts with the laws of the State and is not germane to the purposes of the charter. People v. Mech. Aid. Soc., 22 Mich. 86; State v. Carteret Club, 40 N. J. L. 295; State v. Georgia Med. Soc., 38 Ga. 608; People v. Board of Trade, 45 Ill. 412.

The Board of Trade is an incorporated association of which petitioner was a charter member.

His rights flow from the charter. Pitcher v. Board of Trade, 20 Ill. App. 319.

Its powers are defined by its charter. It may buy, sell and lease lands. It has become an institution for gain. People v. Nelson, 46 N. Y. 477; State v. Benev. Soc., 72 Mo. 146; Board of Trade v. People, 91 Ill. 80; Golden Rule v. People, 118 Ill. 492; Bd. of Trade v. N. Y. & C. Stock Exch., 127 Ill. 153.

Nelson v. Board of Trade.

Membership is property.    Weaver v. Fisher, 110 Ill. 146; Jones v. Fisher, 116 Ill. 68.

The board is given power by its charter :

1.    To admit and expel.

2.    To fine.

3.    To enact by-laws not contrary to the laws of the land.

If it has an inherent power of expulsion, it is only for offenses of an infamous character or subversive of the purposes of the corporation, that is, working to its destruction as a body corporate.

The power to expel does not include the power to suspend. Schassberger v. Staendel, C. P. No. 2, Dec. 13, 1880; 9 W. N. of C. 379.

The mandamus act has been in force since July 1, 1874, and an action for mandamus is now a civil suit governed by rules applicable to " other cases at law " (Sec. 4); not to be dismissed because petitioner may have " another specific legal remedy " (Sec. 9); and is to be instituted by petitioner, not the people (Secs. 1, 4, *et seq.*).    R. S., Ch. 87; People v. Webber, 86 Ill. 283; City v. Sansum, 87 Ill. 182; Dement v. Rokker, 126 Ill. 174; Brokaw v. Comrs., 130 Ill. 482; People v. Town Mt. Morris, 145 Ill. 427.

Mandamus is the proper remedy to restore one to the enjoyment of the privileges of an incorporated association, of which he has been unlawfully deprived.    People v. Med. Soc., 32 N. Y. 187; State v. White, 82 Ind. 278.

Green, Robbins & Honore, attorneys for appellee; A. W. Green, counsel.

Mr. Presiding Justice Waterman delivered the opinion of the Court.

We can not regard the attempt of the Board of Trade to limit the charges which warehousemen may make or the business which the managers of grain warehouses may do as an infringement of or counter to any law of this State. True it is that under the laws of this State the charges that may be made for the storage of grain in public warehouses

are limited, but there is as yet no legislation depriving ware-housemen of the right to make their charges less than the maximum fixed by law. The action of the Board of Trade in this regard is merely that of declining to class the grain certificates issued by warehousemen as regular unless such warehousemen comply with certain conditions. The Board of Trade is under no legal obligation to classify warehouse certificates as regular, and the warehousemen are under no legal obligation to keep the certificates hereafter issued by them regular.

The Board of Trade and the warehousemen are each at perfect liberty to terminate all business relations.

What the effect of the rule imposing new obligations upon the warehousemen as a condition of having the certificates issued by them treated by the Board of Trade as regular, may be upon the bonds by them heretofore given to protect such certificates, is a question upon which we are not now called to express an opinion.

Whether because of the proceedings against the petitioner, as a result of which he was indefinitely suspended, the court will, by mandamus, compel his re-instatement, presents a question of more difficulty.

As a general rule it may be stated that where the rules and regulations of a voluntary society provide for the disciplining of members and for a method of hearing as to, and determining whether offenses have been committed, the judgment of such tribunal is final and conclusive, the rules, regulations and judgment of such society not being opposed to the law of the land nor in disregard of its charter or by-laws. Angell & Ames on Corporations (11th Ed.), Sec. 418; High on Ex. Legal Remedies (2d Ed.), Sec. 292; Pitcher v. Board of Trade, 121 Ill. 412.

Appellant contends that while it is true that the rules of the Board of Trade provide that a member may be suspended for "any act of bad faith," and he is charged in terms with being guilty of such an act, yet the specification in the charge, defining, as it does, what the so-called act of bad faith is, negatives upon its face the idea that such act could be bad faith upon his part.

The charge is bad faith and dishonorable conduct in not carrying out a certain agreement. This agreement it is not charged was made or signed by the petitioner or on his behalf or by his procurement; neither is it alleged that he was or is in any way a party thereto, or bound honorably or otherwise to carry the same out, or that he is able to do so.

The petitioner does appear to be the manager of the National Elevator and Dock Company, but it nowhere appears that either as such manager or personally he was a party to such agreement or is able or bound to carry the same out.

On the contrary it fairly appears that he is not able to carry out such agreement.

By the pleadings it is admitted that appellant's membership has a value of $800. This is a substantial sum, one which never has been and can not be passed by under the maxim *De minimis non curat lex.* Such value for the purposes of this proceeding is as efficacious as if it were a million of dollars. It appears, also, by the petition, that appellee owns in the city of Chicago, real estate of the value of about $3,000,000; that its aggregate income for the current year, 1893, was $229,586.85, of which $119,198.18 was from tenants occupying rooms in the building it has erected at a cost of $2,500,000; that during said year it received for the rent of tables and drawers upon its floor, $12,181.49, from assessment upon members, $84,960, and paid for taxes on its real estate, $27,252.19, for insurance, $4,700.52, for expenses of its real estate department, $62,719.05, and for janitor's services $3,860, leaving a net profit derived from its real estate department of $54,527.50; that it has outstanding an indebtedness of $1,250,000 secured by mortgage upon its real estate.

Appellant, as a member, has an interest in this great property as well as in the net income of over $50,000 per annum derived therefrom.

It is manifest that such a property must be managed with skill and integrity, else it will be lost to its owners. Ap-

pellant, by his suspension, is deprived of all voice in the control and supervision of this property and rendered powerless to prevent its waste or neglect by improvidence, or its dissipation through fraud.

The petition of appellant is manifestly concerning a property right. Weaver v. Fisher, 110 Ill. 146; Jones v. Fisher, 116 Ill. 68.

Courts of law, acting by the writ of mandamus directly upon corporations, exercise a control over the power of amotion, and may, and do investigate proceedings for the amotion of corporate members. High on Extraordinary Remedies, Sec. 291, 293, 294 and 295; Angell & Ames on Corporations, 10th Ed., Secs. 704 and 705; The State ex rel. Cuppell v. Milwaukee Chamber of Commerce, 47 Wis. 670; The State ex rel. Graham v. The Chamber of Commerce, 20 Wis. 63; Green v. African Methodist Episcopal Society, 1 Serg. & Rawle, 254; Commonwealth ex rel. Fischer v. The German Society, 15 Penn. St. 251; Dos Passos on Stock Brokers and Stock Exchanges, 37; State ex rel. George E. Sibley v. The Board of Management of the Carteret Club of Elizabeth, 40 N. J. L. 295.

The right to the writ of mandamus extends to one improperly suspended. Lambert v. United Workmen, 47 Mich. 86.

Appellant, in becoming a member of the Chicago Board of Trade, agreed to be bound by its rules and regulations. Among these are by-laws for the disciplining of members and providing for a tribunal before which they may be tried. Where such tribunal proceeds regularly, that is, in accordance with its own rules, they being not contrary to public policy or to the law of the land, and the procedure not being *mala fides* or repugnant to natural justice, the merits of a judgment thus rendered will not be inquired into collaterally. Black & White Smiths Society v. Van Dyke, 2 Wheaton 309; Dawkins v. Antrobus, L. R., 17 Ch. Div. 615; Angell & Ames on Corporations, Sec. 418; Pitcher v. Board of Trade, 121 Ill. 412–420.

When the action of such tribunal is violative of the rules of the corporation, in disregard of the rights of members

thereunder or of the law of the land, courts will interfere to compel the restoration of the corporate franchise of which a member has been improperly deprived.

The tribunal of a private corporation created by the agreement of its members is a quasi-judicial body; but it is not, even in respect to the matters by consent committed to its charge, a court of superior jurisdiction. It does, indeed, sit and act judicially, but with a limited and inferior jurisdiction; and is bound to proceed in conformity with the rules under which it exists and acts. Ryan v. Cudahy, Supreme Court of Illinois, opinion filed at the March term, 1895; Labouchere v. Earl of Wharncliffe, L. R., 15 Ch. Div. 346.

A person in becoming a member of a corporation and agreeing to be bound by its laws, does not agree to submit to acts violative of the rules by which he and all other corporators are bound.

The petitioner in the present case does not complain of the by-law providing for expulsion or suspension; his insistance is that in pretended following of the by-law, an act, manifestly not one of " bad faith " or dishonorable conduct, has been charged and found to be so; in other words, that the plain meaning of language has been tortured and perverted to the end that he might be suspended for no offense; that by violation of its rules and not in accordance therewith has he been suspended by the directors of the Board of Trade.

If the words of statutes are to be interpreted in their ordinary—their popular sense, *uti loquitur vulgus* (Endlich on the Construction of Statutes, Sec. 76; Potter's Dwarris on Statutes, page 307; Maillard v. Lawrence, 16 Howard, U. S. 251–261), how much the more should so just a rule be applicable to the by-laws of a private corporation, not only made for, but the enforcement of which is confided to men not learned in the law?

The words "bad faith" imply a breach of faith, a willful failure to respond to a plain and well understood obligation. They mean not only the existence of an honorable obligation, but a dishonorable refusal or neglect to comply with

the same; they imply much more than mere inability to respond.

The directors of the Chicago Board of Trade have not the power to declare that "bad faith and dishonorable conduct" which is nothing of the kind; the rule permitting expulsion for acts of bad faith is not one by which members may be expelled at the pleasure of the board, without reference to the character of the deeds it may see fit to designate as bad faith and dishonorable conduct.

To have charged the petitioner with bad faith and dishonorable conduct in not enforcing in Chicago the law against the opening of dramshops on Sunday, or in not procuring the restoration of the free coinage of silver, or in not carrying out the engagement of John Doe and Richard Roe to pay rent to the board, would have been characterized as absurd. So, too, is such a charge when described as consisting in a failure to carry out an agreement which the defendant is not alleged or shown to have been a party to, or bound or able to perform.

Where property rights are involved, courts have the power to examine the proceedings of the quasi-judicial tribunals of corporations such as this for the purpose of seeing if the action of such body has been in substantial accordance with the law and rules provided for its government. Ryan v. Cudahy, *supra;* Angell on Corporations, Sec. 311; American and Eng. Ency. of Law, Vol. 4, page 289; State v. Williams, 75 N. C. 446; White v. Brownell, 4 Abb. Pr. N. S. 446.

The judgment of the Superior Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

GARY, J.

I dissent upon the ground that the result arrived at is inconsistent with all former decisions of the Supreme Court upon the subject-matter of the petition, unless they are qualified by Ryan v. Cudahy, cited in the opinion of Judge Waterman, which the Supreme Court in that opinion say is not the case.