62  541
162s 431

## Board of Trade, etc., et al., v. Murry Nelson.

1. MANDAMUS—*Respondent Must Deny or Allege Facts, etc.*—The respondent, in a proceeding by mandamus, must deny the facts alleged in the petition on which the claim of the relator is founded, or set up other facts sufficient in law to defeat such claim, stating these facts positively and distinctly. Every intendment is made against returns which do not answer the important facts.

Mandamus.—Appeal from the Superior Court of Cook County; the Hon. HENRY V. FREEMAN, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed February 11, 1896.

GREEN, ROBBINS & HONORE, attorneys for appellants, contended that the courts of law, acting by the writ of mandamus directly upon corporations, exercise a control over the power of amotion and may and do investigate proceedings for the amotion of corporate members. Appellant, in becoming a member of the Chicago Board of Trade, agreed to be bound by its rules and regulations. Among these are by-laws for the disciplining of members and providing for a tribunal before which they may be tried. Where such tribunal proceeds regularly, that is, in accordance with its own rules, they being not contrary to public policy or to the law of the land, and the proceeding not being *mala fides* or repugnant to natural justice, the merits of the judgment thus rendered will not be inquired into collaterally. People ex rel. Rice v. Board of Trade, 80 Ill. 134.

Where property rights are involved, the courts have the power to so far supervise the action of a tribunal like the

one in question as to determine whether they have proceeded according to the rules and regulations provided for their action, and if they have failed in a substantial manner, correct abuses which may result from their unwarranted procedure.    Com. v. Pike Ben. Soc., 8 W. & S. 250; Com. v. The German Soc., 15 Pa. St. 254; Society v. Commonwealth, 52 Pa. St. 133; Commonwealth v. Penn. Ben. Inst., 2 S. & R. 141; Wood v. Wood, L. R., 9 Exch. 196.

The writ of mandamus is only issued to accomplish the ends of justice and to obtain substantial results; in such cases the restored member might be again expelled or suspended by regular proceedings for the same offense, since a void proceeding is no bar to a subsequent correct proceeding.    Merrill on Mandamus, Sec. 17; People v. Anshei C. H. Cong., 37 Mich. 542; State v. Society, 15 La. Ann. 73; State v. Milwaukee Chamber of Commerce, 47 Wis. 670.

GEO. W. SMITH and MURRY NELSON, JR., attorneys for appellee, contended that mandamus is now a civil action in Illinois, and the answer takes the place of the return to the alternative writ under the old practice.    Chicago & A. R. R. Co. v. Suffern, 129 Ill. 284.

The return is to show not merely what would be a *prima facie* right in the respondent, in the absence of any allegation to the contrary, but a right to refuse obedience to the writ.    High on Ex. Leg. Remedies, Sec. 460; Comm. v. Com'rs of Alleghany, 37 Pa. St. 277.

All matter set up in the answer by way of confession and avoidance is ill pleaded if it does not answer the material allegations of the petition.    People ex rel. Brewster et al. v. Kilduff, 15 Ill. 492 *et seq.;* Chicago & A. R. R. Co. v. Suffern. 129 Ill. 284; People ex rel. Hemstreet v. Crabb, 156 Ill. 155.

The Board of Trade has no charter power to suspend. Charter, Sec. 6; Pet. p. 42; Schassberger v. Staendel, 9 W. N. C. 379.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

This case has already been before this court, and is re-

ported in 58 Ill. App. 399, to which reference is made for a statement of the facts then and now appearing, save that since the remanding of the cause to the Superior Court, an answer to the petition has been filed by the respondent, to which a demurrer was sustained by that court.

The answer sets forth in substance that " For many years prior to the first day of July, 1894, the National Elevator and Dock Company had, in each year, applied to have its elevators and the receipts thereof declared regular under the rules of the Board of Trade for the term ending on the first day of July of the succeeding year.   During all these years the petitioner was the president and manager of said company and its elevators.   The rules of the Board of Trade, in regard to the subject-matter of warehouses and the receipt thereof, were, during said period, changed from time to time. The applications were made either by the petitioner on behalf of said company himself, or by his direction by Wayman, the secretary and treasurer of said company.   Said applications were made without any resolutions of the board of directors of said company authorizing the same, and the power of binding said company in all its dealings with the Board of Trade and its members was both apparently and actually lodged in said petitioner, and both he and Wayman were held out to the Board of Trade and its members for a series of years without any question on the part of any of the parties as having the right, power and authority to bind said company in all matters relating to said company and its elevators in their relation to said Board of Trade and its members.

For many years after the establishment of public warehouses in Chicago, the proprietors of such warehouses engaged in the legitimate business of storing grain for other persons and acted purely and legitimately as warehousemen, but for some time prior to July, 1894, the elevator proprietors had gone into the business of buying grain on their own account and storing it in their own warehouses.   This practice has led to great abuses.

It was claimed by a large portion of the members of the

Board of Trade, who were not themselves interested in elevators, that the elevator proprietors had no right to buy grain on their own account and store it in their elevators; that they were public warehousemen, whose duty it was to receive for storage the grain of other parties, store it in their warehouses and deliver it out in accordance with law; and it was also claimed that the rates of storage charged by said elevator proprietors were too large.

The elevator proprietors formed an association, to which the National Elevator and Dock Company became a party through said petitioner, and at meetings of said association the said company was represented either by said petitioner or by Wayman. Various negotiations were had between the members of the Board of Trade through committees of members or through the board of directors on the one side and the elevator proprietors on the other side for a settlement of the controversies between them without resort to any legal proceedings.

The combination of elevator proprietors at first refused to make application to have their warehouses and receipts declared regular for the term ending July 1, 1895, unless they were permitted to deal without restriction in grain and store the same in their own warehouses and also to charge the rates of storage in force prior to July 1, 1894.

A compromise was finally agreed upon which found its expression in certain amendments to section 1 of rule XXI, as set forth in exhibit "B," attached to the petition. These amendments provided for reduced rates of storage in all warehouses declared regular by the board of directors of the Board of Trade, for restrictions upon the proprietors of such warehouses in the purchase and sale of grain, for abolishing the abuses in the selection of grain for delivery, and for other matters of benefit to the grain trade.

The elevator association in its meeting agreed to this compromise, either the petitioner or Wayman being present at said meeting and voting in favor thereof. None of the elevator proprietors would agree to any compromise to which all did not agree.

Before submitting this compromise to a vote of the members of the Board of Trade, it was necessary that the association should be assured that all of the elevator proprietors and managers agreed thereto, because if said compromise was adopted and any elevator proprietors refused to come into it, the receipts issued for grain stored in the elevators of such proprietors then scattered around among the various members of the Board of Trade would immediately be at a discount, because they would carry a greater rate of storage than the receipts of the other elevators, whose proprietors had agreed to such compromise, and it would also leave the elevator proprietors who did not come into such compromise free to buy grain without restriction, and to continue the other abuses sought to be abated by said amended rule.

It was exacted of said elevator association that the signatures of all the elevator proprietors or managers should be procured, agreeing that if such proposed amendment to section 1 of rule XXI should be adopted, they would all have their houses made regular under it, and thereupon to a copy of said section 1 of rule XXI, as proposed to be amended, was attached the following :

" We, the undersigned elevator proprietors and managers agree to apply to have our elevators made regular if the above section to rule XXI, as presented to us, is adopted by the Board of Trade."

This agreement was signed by all the elevator proprietors, being signed on behalf of the National Elevator and Dock Company as follows :

" National Elevator and Dock Co.
J. B. Wayman, Sec'y and Treas."

Said section 1 of rule XXI, as proposed to be amended, was posted for ballot in accordance with the rules of the association on August 1, 1894, and on the same day there was posted the above mentioned copy of said section with the said agreement signed by all the elevator proprietors.

The answer denies that in signing said agreement Wayman signed the same without authority, or that he departed in any way from any suggestions or instructions given him

by the petitioner. The answer alleges that the petitioner knew of such agreement and of the signature thereto on behalf of the National Elevator and Dock Company on August 1, 1894, and that prior to August 14, 1894, he never repudiated such signature or took any steps whatever to inform the Board of Trade, or its members, that the National Elevator and Dock Company would not carry out the same under the terms of said agreement.

The said petitioner, well knowing the importance of having said agreement carried out by all the elevator proprietors if the amendments were adopted, was bound by every requisite of honor and good faith to repudiate such signature if he did not intend to carry out the said agreement, and to inform the Board of Trade and its members, that such agreement was not binding through such signature upon the company. The answer denies that the members of the Board of Trade, in voting for said rule as amended, were not influenced or determined in their course because of the fact of such signature on behalf of the said elevator company. On the contrary, the answer alleges that if the petitioner by any word or act of his, from the first day of August, 1894, to the 13th day of August, 1894, had informed or even intimated to the members of the Board of Trade that he did not consider the said company bound to carry out said agreement, or that there was any question in regard thereto, the said amendment would never have been adopted.

After the adoption of said rule as amended, all the elevator proprietors, except the National Elevator and Dock Company, immediately carried out the said agreement and applied to have their elevators declared regular, and conformed to the requirements of said rule so amended, and were so declared regular.

· But the petitioner, on behalf of the National Elevator and Dock Company, declined to carry out the said agreement, and then, for the first time, stated that he did not consider said agreement binding upon said company. During all the time a majority of the board of directors of said company

was in the city of Chicago, and no effort was made by the said petitioner to secure a meeting of said board of directors, and no effort made by him to obtain the assent of said directors for carrying out said agreement on behalf of said company; in fact, no such meeting or assent was necessary. The said petitioner had full power to carry out said agreement, and to make the application mentioned in said agreement, if he so desired, but he refused so to do.

Great loss and damage resulted to the members of the Board of Trade by the willful refusal on the part of said petitioner to have the National Elevator and Dock Company carry out said agreement, and especially to members of the Board of Trade who held the warehouse receipts of said company, who lost a great many thousand dollars solely by the conduct of said petitioner.

On August 31, 1894, the charge was preferred against the said petitioner, as set forth in said petition. Notification of the time when said charge was to be heard, with a copy of the charge, was served upon the petitioner, as stated in the petition, in accordance with the provisions of the rule in such cases. After certain adjournments of the hearing of said charge, the same was heard on September 18, 1894. The defendant appeared before the board of directors and testimony was heard in regard to the truth of said charge. There was a regular hearing of such charge in accordance with the rules of the Board of Trade, and petitioner was fully heard in his own defense. The board of directors found, as matters of fact, that Wayman had full power to sign the said agreement on behalf of the said National Elevator and Dock Company; that petitioner was the president of said company and knew that the said agreement had been signed on behalf of said company, and never repudiated the same, and by his conduct led the members of the Board of Trade to believe that the National Elevator and Dock Company would carry out such agreement if section 1 of rule XXI as amended was adopted, and that the members voted upon the proposition to amend such rule in such belief. That after such rule was adopted the petitioner

declined to permit the National Elevator and Dock Company to carry out said agreement; that it was within his power to carry out the same, and that he willfully refused so to do, and that such conduct on his part was an act of bad faith and dishonorable conduct, and that thereupon the board of directors suspended the petitioner.

It is urged that the answer shows that appellee had been, before his trial by the board, guilty of "bad faith and dishonorable conduct," and that if the trial was irregular, yet it is manifest he would, if restored, be again tried and expelled, and therefore the court will not compel his restoration.

If we deemed the premise of appellant's argument well taken, we should perhaps join in its conclusion.

The answer not only sets up conduct with which appellee was not charged, but assumes that the allegations now made are equivalent to an accusation of "bad faith and dishonorable conduct" in not carrying out the terms of an agreement signed by "J. B. Wayman, secretary and treasurer of the National Elevator and Dock Company," a copy of which agreement was attached to the charges preferred against appellee.

The agreement signed by Wayman doubtless was understood, and intended, to be by the corporation of which he was secretary and treasurer.

The answer alleges that in signing such agreement Wayman did not depart from any instruction given to him by appellee; that the petitioner knew of such agreement, and never repudiated the same or informed the board that the Dock company would not carry out the same, or was not bound in good faith to do so. That the petitioner was bound in good faith to repudiate such signature if he did not intend to carry out the said agreement.

The answer fails to show that the petitioner was a party to such agreement, procured the making thereof, or is responsible for its existence. All through the answer, the Dock company, as the party to the agreement, is ignored, and an attempt is made to treat the petitioner as the party who executed the undertaking.

The answer also sets up that the petitioner had full power to carry out the said agreement and to make the application mentioned therein, but that he refused so to do. This does not show bad faith and dishonorable conduct. Was he honorably bound to carry out the agreement, and if so, why?

The petitioner is not shown to be the owner of all the stock of the Elevator and Dock company; presumably he is, as president of said company, a trustee for all the stockholders; his duty as such trustee may require him to refrain from doing what the board desires that he shall.

The question is not as to his power to carry out the agreement made by the Dock company or Wayman, but as to his honorable obligation to compel, by said company or Wayman, the performance of an obligation to which petitioner was not a party, nor in any way responsible for the creation of.

It is alleged in the answer that upon the trial the board of directors found that the petitioner, knowing of the existence of said agreement, never repudiated the same, and "by his conduct led the members of the Board of Trade to believe that the National Elevator and Dock Company would carry out such agreement if section 1 of rule 21 as amended was adopted, and that the members voted upon the proposition to amend such rule in such belief."

Certainly, the petitioner had not notice that he could be or was tried for such failure to repudiate, knowledge, conduct or belief.

If upon such finding he was suspended, then he was convicted for an offense of which he was not accused; a proceeding hardly conformable to natural justice.

It may be that the board of directors found that the petitioner was guilty of these things, but it does not appear that the petitioner had notice that he was to be tried for this, or had an opportunity to meet such accusation.

Had he been put upon trial for what it is said he was found guilty of, how could he have met the accusation? "By his conduct led the members of the Board of Trade to

believe that the National Elevator and Dock Company could carry out such agreement if," etc. What conduct? Did he intentionally by his " conduct" lead the members of the board thus to " believe"? And did he know that such was their opinion, or that the members " voted" (for or against?) upon the proposition to amend such rule in such belief?

Our attention has not been called to any rule or regulation of the board which permits a trial and expulsion or suspension upon charges so indefinite.

The respondent must deny the facts alleged in the petition on which the claim of the relator is founded, or set up other facts sufficient in law to defeat such claim, stating these facts positively and distinctly. (Moses on Mandamus, p. 210.) *Every intendment is made against returns which do not answer the important facts.* The People ex rel. Brewster et al. v. Kilduff, 15 Ill. 492 *et seq.;* C. & A. R. R. Co. v. Suffern, *supra;* The People ex rel. v. Crabb, 156 Ill. 155.

It does not appear that the petitioner has been guilty of conduct destructive to the interests of the corporation, or on account of which he would, if restored by regular proceedings, be suspended or expelled.

The judgment of the Superior Court is affirmed.