## The People of the State of Illinois, ex rel. William E. Dodson, v. The Board of Trade of the City of Chicago, et al.

### Gen. No. 12,303.

1. MANDAMUS—*certainty required of answer in.* "Certainty to a certain intent in every particular" is not required of an answer in *mandamus;* it suffices if the answer without ambiguity or evasion responds to and denies the assertions of the petition.

2. MANDAMUS—*when defects of answer in, cannot be urged upon general demurrer.* The sufficiency of a denial contained in an answer cannot be raised by general demurrer.

3. BOARD OF TRADE—*when courts will not interfere to prevent forfeiture of membership in.* The courts will not interfere to prevent forfeiture of a membership in the board of trade where such forfeiture has been made pursuant to the by-laws in force at the time of the acquisition of such membership.

4. BOARD OF TRADE—*by-law as to payment of dues construed.* A by-law of the board of trade involved in this case which pertained to the payment of dues, construed to require the payment of dues by a member during his period of suspension.

*Mandamus* proceeding. Appeal from the Circuit Court of Cook County; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed March 1, 1906.

H. J. TONER and JOSEPH I. KELLY, for appellant.

HENRY S. ROBBINS, for appellees.

Mr. Justice Brown delivered the opinion of the court.

The relator in this case was suspended from "the privileges of membership" in the Board of Trade of the appellee under Section 9 of Rule IV of said Board, on December 26, 1893, for ten years. January 4, 1904, he demanded of the "President, Secretary and Board of Directors of the Board of Trade of Chicago, and of the Board of Trade" that they should immediately replace his name on the roll of active members of the Board and recognize him as a member thereof. He was under date of January 9, 1904, informed in writing by George F. Stone, Secretary of the Board, that this demand had been duly presented to the Directors and that he as Secretary had been instructed to refer the relator to section 3 of rule X of the Board, and to state that the privilege of membership which stood in the name of William E. Dodson had expired under the provisions of said Section, for failure to pay dues for the year 1894.

Thereafter, on April 12, 1904, leave having been granted by the Circuit Court of Cook County to the relator to do so, he filed a petition in that court praying for a peremptory writ of *mandamus* to be directed to the Board of Trade and its Secretary, commanding them to restore him to all the rights and privileges of membership in said Board of Trade, and to place his name upon the roll of members of said Board, and to accord to him all the rights and privileges of membership; and praying also that he be allowed his costs and damages in that behalf sustained.

The Board of Trade and its Secretary appeared by attorney and answered the petition, alleging "for return and answer" first, that the petition did not state a case in which the court could or should issue a writ of *mandamus,* and asking the same benefit and advantage from said objection as though they had interposed "a *concilium* or demurrer" to the petition, and then setting out certain rules of the Board of Trade, including section 9 of rule IV and section 3 of rule X, and averring that the relator had refused to comply with section 3 of rule X, and had not paid his annual assess-

ment for the year 1894, by reason of which his membership was forfeited and cancelled, and all his rights and privileges as a member thereafter ceased.

The answer also set up that before the year 1894 had expired, respondents caused notice to be given to the relator, by posting his name on the bulletin board in the exchange room of the Board, and that afterward the following correspondence passed between the parties at the dates given:

"CHICAGO, DEC. 8TH., 1894.
*Mr. George F. Stone, Sec'y., City:*
DEAR SIR:— Will you kindly let me know the amt. of dues and assessments that now stand against my membership to the Board of Trade and how long a time I have to pay them before the membership is declared forfeited.
Yours truly,
W. E. DODSON,
28 Jackson Street, Chicago, Ill."

"SECRETARY'S OFFICE,

DECEMBER 10, 1894.
*Mr. W. E. Dodson,*
No. 28 Jackson St., Chicago;
DEAR SIR:— Yours of the 8th inst. is received. I inclose an extra notification of the amount of dues this year. The dues of the year 1894 must be paid during the present fiscal year, which closes on the 7th day of January, 1895. These dues must be paid on or before that date without fail to save the membership from cancellation and forfeiture under the rules of this organization.
Yours very truly,
GEO. F. STONE,
Secretary."

The answer then denies various allegations of the petition, among them the statement that relator was under no obligation to pay dues and assessments to the Board of Trade during his suspension, and the statement that section 3 of rule X is not justified under the charter and by-laws of

the Board of Trade. It alleges that by the charter of the corporation it is provided that it shall have the right to admit and expel such persons as it may see fit, in manner to be prescribed by its rules, regulations and by-laws, and that the relator, before becoming a member of the Board of Trade, signed an agreement which was in full force and effect at the time the relator's membership was cancelled, as follows:

" We, the undersigned, members of the Board of Trade of the City of Chicago, do by our respective signatures, and by virtue of our membership in said corporation, hereby mutually agree and covenant with each other and with the said corporation that we will in our actions and dealings with each other and with the said corporation be in all respects governed by and respect the rules, regulations and by-laws of the said corporation, as they now exist or as they may be hereafter modified, altered or amended."

This answer was verified by George F. Stone. To said "return and answer" the said respondents filed a general demurrer. After hearing the demurrer the Circuit Court entered an order overruling the same, reciting that the relator elected to stand by his demurrer and refused to plead over, finding that the answer was sufficient in law, and that the relator was not entitled to the relief prayed for in his petition, finding also the issues in favor of the respondents, and dismissing the petition with costs.

The relator prayed an appeal to this court, in which he has assigned as error the overruling of his demurrer to the respondents' answer, and the finding of the issues and the judgment for the respondents.

The contention of the relator is that he was unwarrantably and unjustifiably deprived of his membership: First, because he had violated no rule or by-law of the Board and was in no default. Section 3 of rule X, he claims, did not apply to him when under suspension. Secondly, because, assuming section 3 of rule X to be otherwise applicable to him when under suspension, yet in so far as it provides for deprivation of membership without notice and opportunity

to be heard, it is "unreasonable," "unwarranted by the charter," "contrary to public policy," and "contrary to the law of the land," and therefore void as against him.   It is also unreasonable and therefore void, he claims, because it places the power of forfeiture in the hands of the Secretary, although it makes such forfeiture depend upon facts, the existence of which the Board of Managers or Directors alone can have the power to determine.

The relator further contends that if the cancellation of his membership were thus unwarrantable, either because there was no by-law of the Board applicable to his authorizing it, or because a by-law purporting to do so was unreasonable, illegal and void, said cancellation was illegal, and being so illegal, should be set aside by the peremptory writ of *mandamus* for which he asks, *mandamus* being the proper remedy to restore a member of a corporation improperly removed, and a remedy which springs from the visitatorial power of the State over all its corporate creations.

As incidental to the main contentions we have outlined, the relator insists that the return or answer to his petition is not certain enough for a common law pleading, that as the pleadings in *mandamus* are at common law, all things in them not expressly denied are admitted, and that the application of this rule involves an admission by the respondents that the relator, as alleged in the 16th paragraph of his petition, although entitled to notice of the making of the alleged assessment of 1894, received none.

Although not in our view an essential matter in the case, this last contention may be at once disposed of.   By our statute and practice, the same rules of pleading are applicable to proceedings in *mandamus* as to other suits at law.   The doctrine that "certainty to a certain intent in every particular" is necessary in a return or answer, has been generally relaxed, and it suffices if the answer without ambiguity or evasion responds to and denies the assertions of the alternative writ, or of the petition which, in our practice, takes its place.   Merrill on Mandamus, sec. 274.   In the case at bar the objection really is that the statement in the answer

that "respondents deny the allegations and each of them contained in the 16th paragraph of the Relator's Petition," is not a sufficient denial, because it does not repeat the words of said allegations and traverse them. If the denial is too general for a truly artificial pleading at common law (which we do not decide), the objection should have been taken by a special demurrer, not urged under a general one. The demurrer admits only what is well pleaded, it is true, but "well pleaded" in this connection does not mean pleaded with the highest degree of technical accuracy, but means, substantially alleged and relevant to the issue.

The main contentions in the cause the appellant's counsel press with great force and ability.

It is not to be denied that it seems, as counsel contend, just, that in an incorporated association where the memberships have a high money value, the courts should scrutinize forfeitures more closely than in the case of "clubs, churches, volunteer fire departments, etc.," and that there is a distinction in reason between the manner in which corporations or associations formed for some political, ethical or religious cult may properly treat its memberships, and that in which purely commercial exchanges should treat them. It was in view of these considerations, doubtless, that this court, by a divided court, however, in Nelson v. The Board of Trade, 58 Ill. App., 399, held that a demurrer should have been overruled to a petition for *mandamus,* which alleged that the petitioner was improperly suspended indefinitely from the Chicago Board of Trade, and further alleged that the charge on which he was so disciplined did not constitute an act made punishable by the rules of the Board, and consequently was not sufficient to confer jurisdiction on the directors to amove him. The Appellate Court thought that the specifications in the charge defining the alleged act negatived the proposition that the act was within the purview of the disciplinary rule, and therefore that it was proper for the courts to intervene. But when the cause reached the Supreme Court (162 Ill., 431), after again coming through this court (62 Ill. App., 541), which had then upheld a demurrer to an answer filed

to the petition, the Supreme Court said: "The petition showed a case with which the Court was powerless to interfere and the demurrer should have been carried back to it," and thus disapproved both judgments of this court. It said also, among other things, that the status of the Board of Trade had been determined by the Supreme Court in numerous cases, and it had been held to be merely a voluntary organization, although incorporated under an Act of the General Assembly; that the corporation was not bound to admit any person to its membership, that the relator voluntarily became a member, and by his contract was bound to abide by the rules and regulations of the Board; that the courts would never interfere to control the enforcement of by-laws of such associations, but would leave them to enforce their rules and regulations by such means as they might adopt for their government. To these propositions the court cites People ex rel. Rice v. Board of Trade, 80 Ill., 134.

In that case the court certainly placed the Board of Trade of Chicago in the same class as churches, masonic bodies, Odd Fellows and temperance lodges, and impliedly at least declared that the relator had no such interest or legal right to membership in the Board as would be regarded by a court of justice, and that the courts would, under no circumstances, interfere to restore an expelled member by *mandamus*. So the Supreme Court of Wisconsin in State v. Chamber of Commerce, 47 Wis., 670–682, construed the language, and so did the text book writer on Stock Exchange —cited by appellant's counsel. Indeed, counsel for appellant rely rather on their ability to point out modifications subsequently made by the Supreme Court in the doctrine announced in the Rice case, than on their ability successfully to distinguish the case itself, which they term "anomalous," and "out of plumb." Especially it is urged that Ryan v. Cudahy, 157 Ill., 123, repudiates the implications of which we have spoken, which might be gathered from the language of the Rice case.

The opinion of the majority of the Appellate Court in Nelson v. Board of Trade, 58 Ill. App., 399, is in agreement

with this position, but Mr. JUSTICE GARY, in his dissenting opinion, points out that the Supreme Court in Ryan v. Cudahy, denied that it was qualifying its former decisions.

In the situation in which the question is left by the decisions of the Supreme Court of the State, we do not think that upon the ground that section 3 of rule X is "unreasonable, unwarranted by the charter" and "contrary to public policy," we could adjudge it void and require the restoration of relator, even if we agreed that all these criticisms of it were just.

We are not unmindful that in Board of Trade v. Nelson, 162 Ill., 431–438, which we have before cited, one ground given for refusing to interfere was, that "The by-law in question was not unreasonable, immoral, contrary to public policy nor in contravention of the laws of the land."

But for the contention that in cases where the by-law or rule of the Board is unreasonable and contrary to public policy, the courts may interfere by *mandamus,* the Supreme Court, in the present state of the decisions, is the only appropriate tribunal. We are obliged, as we think, by the utterances of that court to hold to the contrary.

It is not necessary, however, for us to decide whether we could in any case cancel an amotion and restore a member of the Board of Trade by *mandamus.* We shall decline, for the reasons above given, to consider the reasonableness or justice of the rule under which the forfeiture of the relator's membership was made, but we assume for the purposes of this case, that if the rule in question was not applicable to the relator when that alleged forfeiture occurred, in other words, if there was no default on his part under any rule of the Board, his amotion was illegal, and the court has the power and duty, by virtue of a visitatorial power to rectify it. As the language of section 3 of rule X is very plain and evidently self-executing, this contention depends entirely on the proposition that members of the Board when suspended for a definite period from the "privileges" of membership are relieved for the like time from all its obligations and

liabilities, or at all events, from any obligation to pay "annual assessments."

With this proposition of the relator we cannot agree. To discuss it in connection with the various rules of the Board of Trade appearing as exhibits to the return, would be unconvincing for one party to this appeal and unnecessary for the other. We will therefore content ourselves with the statement that to us it seems evident that the "Rules, Regulations and By-laws," by which the relator agreed on becoming a member of the Board he would be governed, contemplate and provide for payment of annual assessments even by members under suspension, definite or indefinite. Consequently we do not think the court below erred in overruling the demurrer to the answer or refusing the peremptory writ asked for. In what we have said we do not which to be understood as indicating that the rule of the Board involved, or its effect under the circumstances shown by the pleadings in this case, on the rights and interests of the relator, was in our opinion unreasonable or unjust. For the reasons hereinbefore given, we have not felt ourselves at liberty to consider the question, and therefore express no opinion thereon.

The judgment of the Circuit Court is affirmed.

*Affirmed.*